# United States Court of Appeals
## For the First Circuit

Nos. 12-1264, 12-1463

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS SEVILLA-OYOLA,
a/k/a Carlitos Caridad, a/k/a Viejo,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before
Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Rafael F. Castro Lang for appellant.
César S. Rivera-Giraud, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, were on brief, for appellee.

October 16, 2014

**THOMPSON, <u>Circuit Judge</u>**.  We grant the petition for panel rehearing, withdraw our previous opinion in this matter, <u>see</u> 753 F.3d 309 (1st Cir. 2014), and substitute the opinion that follows.

The district judge twice conducted plea colloquies and thrice imposed sentences for Carlos Sevilla-Oyola ("Sevilla"), each one shorter than the last.  Still dissatisfied, Sevilla asks us for another bite at the sentencing apple before a different district judge.  To support his claim before this court, Sevilla says the judge lacked authority for actions taken after entry of the first sentence, and flaws in the initial plea colloquy warrant vacation of the first judgment.  Alternatively, he says that even if the judge's later actions were authorized, they were plagued by additional errors.

Standing alone, these imperfections are not enough to justify setting aside the first sentence.  But given the peculiar circumstances of this case — particularly the developments at and after oral argument — we ultimately do vacate and remand to the same judge for resentencing.  Our reasoning follows.  First, some background.

## BACKGROUND

On July 14, 2010, Sevilla and 108 codefendants were indicted as part of a vast drug ring operating in and around several public housing projects in Bayamón, Puerto Rico.  The indictment charged Sevilla with (1) conspiring to possess narcotics

with intent to distribute, in violation of 21 U.S.C. §§ 841(a), 860 ("Count One"), and (2) aiding and abetting his coconspirators in the use and carriage of firearms in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Two"). It singled out Sevilla as a leader, manager, and enforcer for the drug-trafficking organization.

## A. The First Guilty Plea

On August 9, 2011, Sevilla entered into an agreement with the government, pleading guilty to both counts of the indictment. The parties stipulated that Sevilla was accountable for conspiring to possess at least 2 but less than 3.5 kilograms of cocaine. This amount pegged Sevilla's base offense level at 28 under the U.S. Sentencing Guidelines (the "Guidelines"). See U.S.S.G. § 2D1.1. The parties further agreed that Sevilla would be subject to a two-level protected-location increase, see id. § 2D1.2(a)(1); a two-level leadership enhancement, see id. § 3B1.1(c); and a three-level acceptance-of-responsibility reduction, see id. § 3E1.1, resulting in a total offense level of 29. The parties did not come together on Sevilla's criminal-history category, but they agreed to forgo seeking further adjustments or departures.

In the agreement, Sevilla acknowledged that the district judge retained his sentencing discretion and was not bound by the parties' accord. Sevilla also waived his right to appeal if the

judge "accept[ed] [the] agreement and sentence[d] [him] according to its terms, conditions, and recommendations."

At the change-of-plea hearing that same day, the district judge advised Sevilla of the statutory penalties for the charged offenses based on the stipulated drug quantity: (1) a mandatory minimum term of five years and a maximum term of eighty years of imprisonment as to Count One, see 21 U.S.C. §§ 841(b)(1)(ii), 860; and (2) a consecutive minimum term of five years of imprisonment as to Count Two, see 18 U.S.C. § 924(c)(1)(A)(i).[1]

The judge failed to inform Sevilla that Count Two carried the possibility of a life sentence. See United States v. Ortiz-Garcia, 665 F.3d 279, 282 n.2, 285 (1st Cir. 2011) (explaining that the maximum penalty for an offense under 18 U.S.C. § 924(c)(1)(A) is life imprisonment and is derived from case law).[2] However, he

---

[1] After setting out the mandatory minimum and statutory maximum penalties on Count One, the judge (somewhat unclearly) told Sevilla he also had "a consecutive term of imprisonment of I think it's five years on account of the firearms." Then, when explaining the Guidelines range that applied to Sevilla under the plea agreement, the judge stated the range for Count One, "plus 60 months mandatory" on Count Two.

[2] This court did not explicitly recognize that 18 U.S.C. § 924(c)(1)(A) had a maximum penalty of life imprisonment until we decided Ortiz-Garcia in December 2011 — several months after Sevilla's August 2011 plea colloquy. 665 F.3d at 285-86. However, we explained there that when Ortiz-Garcia pleaded guilty — in June 2010 — the district judge in his case should and did already know the maximum penalty under the statute; he simply forgot to state it at the change-of-plea hearing. Id. at 282, 285-86. It appears the same thing happened here, where, as the judge later candidly admitted, he mistakenly missed stating the maximum penalty while taking Sevilla's plea.

-4-

did draw Sevilla's attention to the penalties mentioned in the plea agreement, which correctly stated that the maximum penalty for Count Two was life imprisonment, and Sevilla said he understood. The judge also neglected to tell Sevilla that he did not qualify for probation, a suspended sentence, or parole.[3]

## B. Pitufo Enters the Scene

The U.S. Probation Office filed Sevilla's pre-sentence investigation report on November 18, 2011. It applied a four-level leadership enhancement, rather than the two levels agreed upon by the parties, bumping Sevilla's total offense level up to 31. Based on Sevilla's five prior convictions — including two violent felonies — it also labeled Sevilla a career offender and set his criminal-history category at VI.[4]

---

[3] Federal Rule of Criminal Procedure 11 ("Rule 11") requires a district judge to address a defendant in open court before accepting a guilty plea in order to ensure the defendant understands the consequences of his plea. Fed. R. Crim. P. 11(b)(1). Among other things, as part of this colloquy, the judge must inform the defendant of "any maximum possible penalty" before accepting the plea. Fed. R. Crim. P. 11(b)(1)(H). The rule does not require the judge to tell the defendant about eligibility for probation, a suspended sentence, or parole. See Fed. R. Crim. P. 11(b)(1).

[4] Sevilla committed the two most violent offenses roughly one month apart in 1996. First, on May 25, Sevilla and others fired shots at a car carrying three individuals. Sevilla was arrested and charged with attempted murder, among other things. Then, on July 10, while out on state bond, Sevilla again fired shots at a vehicle. This time the car belonged to the state witness protection program. Inside were two police officers and four civilians, including an infant. Only one person was hurt. Sevilla was charged with six more counts of attempted murder and several weapons offenses. He pleaded guilty to both sets of charges on May

Shortly thereafter, Sevilla filed objections to the pre-sentence report as well as a memorandum disputing the augmented leadership enhancement and his designation as a career offender. The Probation Office followed up with an addendum standing by its recommendations.

Then, on January 13, 2012, the Probation Office dropped a bombshell on the proceedings. In a second addendum to the pre-sentence report, the Office alleged for the first time that Sevilla had murdered José Manuel Torres-Morales, a.k.a. "Pitufo" (or, in English, "Smurf"), in front of the federal courthouse in Hato Rey, Puerto Rico, on November 9, 2007. Pitufo was a fellow drug-ring member who was then under federal supervision. The brazen murder of a federal supervisee outside the courthouse rocked the Puerto Rican legal community to its core.

No one has ever been charged with this notorious murder. The Probation Office learned of Sevilla's alleged involvement from a cooperating witness, Carlos Manuel Burgos Rodriguez ("Burgos"), also a fellow drug-ring member, who claimed that Sevilla admitted to killing Pitufo.[5] After reading the allegations in the second

_____

7, 1997, and was subsequently sentenced to twelve years for the first shooting and eight years for the second shooting, to run concurrently.

[5] Burgos first mentioned Sevilla's involvement in the Pitufo murder briefly during his testimony before a grand jury. Sevilla suspects the government played some part in notifying the probation officer of this testimony, which led the officer to interview Burgos and to amend Sevilla's pre-sentence investigation report

addendum, the district judge ordered the government to produce Burgos at Sevilla's sentencing hearing. Sevilla did not object to this order, did not argue the judge could not consider the Pitufo information, and did not ask for a continuation of the hearing.

## C. The First Sentencing Hearing

Sevilla's first sentencing hearing took place on January 25, 2012. Burgos took the stand to testify about Sevilla's alleged role in the Pitufo murder. He was questioned by the government and cross-examined by defense counsel. Notably, defense counsel did not argue that Burgos's testimony was impermissible and instead objected only on the basis that she needed more time to prepare. The district judge denied the objection because the second addendum to the pre-sentence report, filed twelve days prior, provided sufficient notice, and because counsel had not sought a continuance before the hearing. Sevilla subsequently testified on his own behalf, disclaiming any involvement in the Pitufo murder and challenging the trustworthiness of Burgos's testimony.

At the hearing's conclusion, the judge made several findings. First, considering Sevilla's serious criminal past (especially his prior violent felony convictions), the judge confirmed Sevilla's designation as a career offender who belonged

---

with the Pitufo murder information. But it is unclear from the record how the probation officer in fact learned of Burgos's statements.

in criminal-history category VI.[6]  Then, considering Burgos's testimony about Sevilla's alleged role in the Pitufo murder, as well as Sevilla's testimony denying any involvement, the judge found that the career-offender and criminal-history-category-VI labels underrated the seriousness of Sevilla's criminal past.[7] Accordingly, the judge departed upward to offense level 38, which is accompanied by a Guidelines sentence range of 360 months to life.  Given the depraved nature and devastating impact of Sevilla's offenses, the judge determined that the highest available sentence was appropriate.  Consequently, he sentenced Sevilla to life imprisonment.

---

[6] The judge stressed that Sevilla's past convictions were not for so-called "Mickey Mouse" or "heartland" crimes, but rather were "a string of amazing convictions which include crimes of violence" like "[s]hooting at vehicles" and "[t]rying to kill witnesses in a witness protection program while . . . released on bail from the other major case of attempted murder."

[7] Throughout the hearing, the district judge — who had been chief judge of the federal courthouse when Pitufo was killed – expressed his outrage and dismay at the havoc the murder had wreaked on the court system.  For example, he said:

> The murder stopped the operation of this court. The murder not only stopped the operation of this court for almost a whole day, it was a disaster what happened here.  The FBI had to take control of the building.  We didn't know where this was coming from. Can you imagine, allowing somebody to use the perimeter of this court to kill supervisees? Imagine getting involved to the point that you're basically interfering with the legitimate governmental function of administering justice. Can you imagine that?  They killed him right in front of the courthouse.  Right in front of the courthouse. . . . It was a horrible thing.

The following day, the judge issued an order apportioning Sevilla's sentence into 327 months on Count One and life imprisonment on Count Two, to run consecutively.[8] Judgment entered against Sevilla on January 26.

## D. Subsequent Proceedings

A few days later, on February 1, 2012, Sevilla moved to set aside the judgment and to correct, reduce, and reconsider his sentence, citing Federal Rule of Criminal Procedure 35(a) ("Rule 35(a)").[9] Sevilla said the district judge had erred at the

_____

[8] At the January 25 hearing, the judge had said:

> I am sentencing the defendant to life imprisonment, and that will include of course the consecutive sentence that had to be imposed on the firearms, because it would be ridiculous to impose a life term plus five years. That doesn't make any sense.

Judge Torruella, in his opinion concurring in part and dissenting in part, says this "strongly suggests that Sevilla was sentenced to life imprisonment on Count 1," i.e., above the 80-year statutory maximum, "and a five-year term on Count 2." But on January 26, the judge offered an alternative explanation: On January 25, he had intended "to look at the two counts together and, after making the corresponding departures, sentence the [d]efendant to life imprisonment." Then, realizing that he should have apportioned the sentence between the counts, see United States v. Zavala-Marti, 715 F.3d 44, 51 n.6 (1st Cir. 2013) (explaining that "the proper procedure is to render a separate sentence on each count" (internal quotation marks and citation omitted)), on January 26 he divided the total life sentence imposed on January 25 among Counts One and Two. Sevilla has not challenged the judge's authority to apportion the sentence and treats the January 25 and January 26 sentences as one sentence.

[9] Rule 35(a) permits a district judge to correct a sentence within fourteen days after sentencing if it "resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). More on this later.

sentencing hearing by considering the Pitufo murder where (1) that crime had not been included in the indictment, and (2) according to Sevilla, defense counsel had not been given adequate time to prepare to refute the allegations before the hearing.

Soon after filing, Sevilla's lawyer fell ill and had to undergo emergency surgery. As a result, the district judge could not hold a hearing on Sevilla's motion before Rule 35(a)'s strict fourteen-day deadline expired.

However, on February 8, one day before the fourteen-day buzzer sounded, the district judge <u>sua sponte</u> issued an order purporting to correct Sevilla's sentence under Rule 35(a) on different grounds. The order sought to rectify two alleged sentencing mistakes. First, the judge said he had intended to sentence Sevilla to 960 months on Count One, followed by life imprisonment on Count Two, but he had erroneously entered only 327 months on Count One. Second, the judge pointed out that the sentence imposed on Count Two was defective under Federal Rule of Criminal Procedure 11 ("Rule 11") because he had not informed Sevilla during the plea colloquy that Count Two carried a maximum penalty of life imprisonment. To correct these errors, the judge upped Sevilla's sentence to 960 months on Count One and reduced it to 60 months on Count Two, to run consecutively for a total of 1020 months (85 years). Amended judgment entered on February 8, 2012.

In the same order, the judge scheduled a hearing a few days later to consider Sevilla's unresolved Rule 35(a) motion from February 1. That hearing was subsequently postponed to February 22 at defense counsel's request.

On February 22, the day of the hearing, Sevilla filed a second motion requesting (1) recusal of the district judge due to bias and personal knowledge; (2) a <u>Santobello</u> hearing to determine whether the government had breached the plea agreement;[10] and (3) vacation of the February 8 judgment because Rule 11 errors at the change-of-plea hearing could not be corrected in a Rule 35(a) order. The motion also highlighted a litany of supposed Rule 11 violations in the plea colloquy beyond the judge's admitted failure to advise Sevilla of Count Two's maximum penalty.[11] Chief among

---

[10] For those not in the know, <u>Santobello</u> v. <u>New York</u>, 404 U.S. 257, 262 (1971), stands for the proposition that prosecutors must abide by their plea agreements.

[11] Specifically, Sevilla claimed the judge had violated Rule 11 when he failed to:

1) inquire as to whether [Sevilla] had the plea agreement translated to him word for word;
2) ask . . . whether [defense counsel] had translated the plea agreement [for Sevilla];
3) ask whether [Sevilla] was aware that he had the right to summon witnesses living beyond the jurisdiction of Puerto Rico pursuant to Rule 17;
4) ask whether [Sevilla] was aware that he had the right to assist his attorney to select a jury of his peers and to execute peremptory challenges and challenges for cause;
5) ask whether . . . Sevilla was aware that parole had been abolished in the federal

-11-

them was that the judge had neglected to inform Sevilla that parole had been abolished from the federal penal system. Sevilla maintained that these additional alleged errors could "only be corrected by an appeal and remand, or by allowing [Sevilla] to withdraw his plea," and not by the district judge issuing an order under Rule 35(a).[12]

At the hearing that day, the district judge considered both Sevilla's February 1 and February 22 motions.[13] Afterwards,

---

<blockquote>
system;

6) ask whether [Sevilla] fully understood the parameters of the waiver of appeal provision;

7) ask whether [defense counsel] had explained the application of the guidelines to [Sevilla's] case;

8) ask whether [defense counsel] had reviewed discovery with [Sevilla] and whether he had received discovery of the evidence;

9) ask whether [Sevilla] had been told that he had a right to be appointed counsel under the Criminal Justice Act if he could not continue to afford to . . . pay a private attorney, if he elected to go to trial.
</blockquote>

[12] In the motion, Sevilla asked for an opportunity to withdraw his plea, but said he would do so only if the judge first made "specific protective findings of fact and conclusions of law," that, among other things, would require the government to offer him the same plea agreement after withdrawal and would give him time to investigate the Pitufo murder allegations before resentencing. But at the hearing that followed, Sevilla's counsel informed the judge that Sevilla "[did] not want to reopen the hearing," and instead wanted to file an appeal, as he did later that day.

[13] As a reminder, unlike the February 22 motion (which criticized the judge's attempt to invoke Rule 35(a)), the February 1 motion asked the judge to act under Rule 35(a). It claimed the judge had erred by considering the Pitufo murder at sentencing and requested that the judge set aside the original January 26 judgment

-12-

the judge issued another order under Rule 35(a) — this time purporting to set aside both the original guilty plea and the February 8 amended sentence to remedy his failure at the colloquy to inform Sevilla about the maximum penalty on Count Two and the impossibility of parole.[14]  The judge noted, however, that the plea agreement still stood, and said he would schedule a new change-of-plea hearing after he issued a separate written ruling denying Sevilla's recusal and <u>Santobello</u> requests.

Later that day, Sevilla filed a notice of appeal from both the amended judgment of February 8 and the February 22 order intended to set aside that judgment.

On February 28, while that appeal was pending, the district judge issued the promised written order denying Sevilla's recusal and <u>Santobello</u> requests.  The judge then scheduled a supplemental plea colloquy and resentencing hearing for March 8. He further announced he would not consider the Pitufo murder at the resentencing hearing, as Sevilla had requested in his February 1

and correct the original January 26 sentence.

[14] The judge knew that his failure to warn Sevilla that parole was unavailable was not, by itself, a violation of Rule 11.  <u>See</u> <u>Johnson</u> v. <u>United States</u>, 650 F.2d 1, 4 (1st Cir. 1981).  However, "the very purpose of Rule 11 . . . 'is to advise a defendant of the actual consequences of his plea so that he can realistically decide whether to plead guilty.'" <u>United States</u> v. <u>Rivera-Maldonado</u>, 560 F.3d 16, 20 (1st Cir. 2009) (quoting <u>United States</u> v. <u>Santo</u>, 225 F.3d 92, 98 (1st Cir. 2000)).  And, as the judge explained, his omission regarding parole could have undermined Sevilla's understanding of the consequences of his plea, even though Rule 11 did not expressly require the judge to discuss it.

motion.  To explain his decision, the judge cited such factors as the timing and seriousness of the accusation, the fact that Sevilla had never been charged with that crime, and the judge's own concerns for justice, fairness, and due process.

On March 3, Sevilla moved to vacate the judge's order scheduling the supplemental plea colloquy and resentencing hearing, arguing that the judge had no authority to conduct the colloquy or to further modify his sentence because Rule 35(a) was not an appropriate vehicle for correcting Rule 11 errors.

Thereafter, on March 5, we issued an order deferring our consideration of Sevilla's appeal until after the newly scheduled plea and resentencing proceedings, so that any subsequent appeal could be consolidated with the pending appeal.

On March 6, the district judge denied Sevilla's motion to vacate his order scheduling the supplemental plea and resentencing hearings.[15]  Then, on March 8, over Sevilla's objection that a full colloquy was required, the district judge conducted a truncated supplemental plea colloquy to ensure Sevilla understood that the maximum possible penalty for Count Two, specifically, was life imprisonment, and that he was ineligible for parole, probation, or

---

[15] In the March 6 order, the judge explained that "Rule 35(a) and Rule 11 were not the exclusive reasons for setting aside the sentence."  Rather, the judge claimed (for the first time) to have acted also under a grant of common-law authority to reconsider and reduce a sentence upon reflection.  See United States v. Benz, 282 U.S. 304, 306-07 (1931).  Neither party has made a Benz argument on appeal, and therefore we do not address it.

-14-

a suspended sentence.  Although defense counsel requested an entirely new colloquy, the judge did not conduct one because he thought there was "no point in repeating" what had already been said.  Instead, the judge advised Sevilla of the information missing from the initial colloquy and asked if Sevilla wanted to abide by the plea agreement.  Sevilla said yes.[16]

Four days later, on March 12, the judge held Sevilla's resentencing hearing.  Even without considering the Pitufo murder, given Sevilla's extensive criminal history, the judge again applied the career-offender guideline and varied upward.  The judge sentenced Sevilla to 345 months on Count One and 60 months on Count Two, to run consecutively for a total of 405 months (33 years and 9 months).  Judgment entered on March 13, 2012.

On March 27, Sevilla filed an amended notice of appeal, challenging (1) all three judgments (January 26, February 8, and March 13); (2) the February 22 order purporting to vacate the February 8 judgment; and (3) the February 28 order denying his recusal and Santobello requests.

---

[16] We pause to remind the reader that at the initial colloquy, the judge had drawn Sevilla's attention to the penalties mentioned in the plea agreement — which correctly stated that the maximum penalty for Count Two was life imprisonment — and Sevilla told the judge that he understood.

**DISCUSSION**

Sevilla raises a panoply of issues on appeal. He claims that (1) the district judge lacked authority to issue the February 8 amended judgment, as well as authority to take all subsequent actions; (2) both the initial and supplemental plea proceedings were defective; (3) the final sentence was unreasonable; and (4) the judge erred in rejecting his recusal and <u>Santobello</u> requests. The government counters that the appeal waiver in the plea agreement bars this challenge. But we bypass this issue because Sevilla's claims, if successful, could invalidate both the plea itself and the waiver of his right to appeal.[17] And so we forge ahead with the merits of Sevilla's appeal.

---

[17] Ordinarily, a court will consider whether a waiver of appeal is enforceable before proceeding to the merits of the case. <u>See, e.g.</u>, <u>United States</u> v. <u>Acosta-Roman</u>, 549 F.3d 1, 3 (1st Cir. 2008). This is because "under ordinary circumstances, a knowing, voluntary waiver of the right to appeal from a sentence, contained in a plea agreement, ought to be enforced . . . [a]bsent some convincing countervailing argument." <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14, 23 (1st Cir. 2001) (footnote omitted). However, a court may opt to go directly to the merits of an appeal where a defendant who has entered a guilty plea and agreed to waive his right to appeal seeks to challenge an aspect of the plea which, "'if successful, would invalidate both the plea itself and the waiver of his right to appeal.'" <u>See</u> <u>United States</u> v. <u>Chambers</u>, 710 F.3d 23, 27 (1st Cir. 2013) (quoting <u>United States</u> v. <u>Santiago Miranda</u>, 654 F.3d 130, 136 (1st Cir. 2011)).

## A. The District Judge's Authority

### 1. Rule 35(a)

Sevilla first argues that Rule 35(a) did not empower the district judge to issue the February 8 judgment, which modified the original January 26 judgment by boosting Sevilla's sentence from 327 months to 960 months on Count One and cutting his sentence from life imprisonment to 60 months on Count Two. Consequently, Sevilla says, the February 8 judgment (and all of the judge's subsequent actions) was null and void.

On appeal, the government concedes that Rule 35(a) did not authorize the district judge's actions on February 8. No matter, the government says — the judge derived his power to take subsequent action from 28 U.S.C. § 2255, a habeas corpus provision.[18] But before we tackle the government's fallback habeas position, we explain why we agree that Rule 35(a) did not empower the judge to act on February 8.

We review issues of law, including the district judge's interpretation of a Federal Rule of Criminal Procedure, <u>de novo</u>. <u>United States</u> v. <u>Leja</u>, 448 F.3d 86, 92 (1st Cir. 2006) (citing <u>United States</u> v. <u>Encarnacion</u>, 239 F.3d 395, 397 (1st Cir. 2001)).

---

[18] Section 2255 enables a federal prisoner to move the court that imposed his sentence "to vacate, set aside[,] or correct the sentence" based on one of four grounds. 28 U.S.C. § 2255. We'll discuss this more fully below.

Rule 35(a) empowers a district judge to "correct a sentence that resulted from arithmetical, technical, or other clear error" within fourteen days after sentencing. Fed. R. Crim. P. 35(a). The function of Rule 35(a) is narrowly circumscribed: It "permit[s] correction . . . of an illegal sentence." Hill v. United States, 368 U.S. 424, 430 (1962). For Rule 35(a) purposes, a sentence is illegal if "[t]he punishment meted out was . . . in excess of that prescribed by relevant statutes, multiple terms were . . . imposed for the same offense, . . . [or] the terms of the sentence itself [were] legally or constitutionally invalid in any respect." Id. Rule 35(a) does not, on the other hand, enable a judge to fix errors committed at trial or during proceedings prior to the imposition of sentence. Id. As such, Rule 35(a) does not provide a means to revisit possible errors in the plea colloquy. See United States v. Vinyard, 539 F.3d 589, 594 (7th Cir. 2008) (finding Rule 35(a) was not an appropriate vehicle for addressing possible Rule 11(b)(1)(H) violation in plea colloquy).

When vacating the January 26 sentence and imposing an amended sentence on February 8, the district judge invoked Rule 35(a) to correct two purported errors: (1) the judge's self-professed mistaken entry of a sentence of 327 months, rather than 960 months, on Count One; and (2) the judge's failure to inform Sevilla during the plea colloquy that Count Two carried a maximum penalty of life imprisonment. Because neither of these alleged

-18-

infirmities resulted in an illegal sentence, Rule 35(a) by its terms does not provide a cure for either.

First, the 327-month sentence that the judge says he entered mistakenly on Count One was not "illegal" in the sights of Rule 35(a).  It was not in excess of statutory limits.  See 21 U.S.C. §§ 841(b)(1)(ii), 860 (setting the maximum penalty at eighty years, or 960 months).  It did not impose multiple terms for the same offense.  See Hill, 368 U.S. at 430.  And no one has argued it was otherwise legally or constitutionally invalid.  See id.

Second, the Rule 11 defect diagnosed by the judge in the plea colloquy — namely, the judge's failure to tell Sevilla that Count Two was punishable by life imprisonment — occurred before sentencing and, thus, is not a sentencing error.  It is therefore decidedly outside the bounds of the type of glitch that Rule 35(a) is designed to mend.  See id.; Vinyard, 539 F.3d at 594.

Accordingly, like the parties, we conclude that the district judge could not rely on Rule 35(a) for authority to issue the February 8 judgment aiming to remedy mistakes he spotted in the January 26 judgment.

### 2. Section 2255

The question, then, is whether 28 U.S.C. § 2255 gave the judge power to act on or after February 8.[19]

---

[19] As a quick recap, the judge's post-February-8 actions were: (1) on February 22, he issued an order intended to set aside the February 8 amended sentence and the original plea due to Rule 11

-19-

Before us, the government argues for the first time that Sevilla's February 22 motion — requesting recusal, a Santobello hearing, and vacation of the February 8 judgment for lack of authority, as well as alleging a string of Rule 11 errors in the plea colloquy — authorized the judge's actions on or after February 8 because the motion functioned as a collateral attack on Sevilla's conviction and sentence under § 2255.  Sevilla did not caption the motion under any particular rule or statute, but simply dubbed it an "omnibus motion regarding sentencing."  And the district judge clearly viewed it as another Rule 35(a) motion.[20]  Nonetheless, because "a motion's character depends upon its substance, not its appellation," United States v. Ortiz, 741 F.3d 288, 291 (1st Cir. 2014), the government says we can and should treat the February 22 motion as a § 2255 challenge based on its content, even though it does not wear a § 2255 label.

We begin with a brief § 2255 primer.  Section 2255 appears in the chapter devoted to habeas corpus and gives a federal prisoner a means to collaterally attack his sentence.  28 U.S.C. § 2255(a).  Specifically, it permits a prisoner to move the court

errors; (2) on February 28, he issued an order denying Sevilla's recusal and Santobello requests and scheduling a new change-of-plea hearing; (3) on March 8, he conducted a supplemental plea colloquy; and (4) on March 12, he resentenced Sevilla.

[20] The February 22 order responding, in part, to the February 22 motion, explicitly states:  "Sentence vacated under Fed. R. Crim. P. 35(a), correcting for clear error emanating from the defective plea colloquy."

-20-

that imposed his sentence "to vacate, set aside, or correct the sentence" because (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." Id.

Notwithstanding this broad language, a § 2255 motion alleging a violation of federal law is generally cognizable only if it involves "a fundamental defect [that] inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428; see also United States v. Vonn, 535 U.S. 55, 63-64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). By this standard, § 2255 relief is not available to remedy "a failure to comply with the formal requirements of a rule of criminal procedure," absent any evidence of prejudice or other injury to the defendant. See Davis v. United States, 417 U.S. 333, 346 (1974) (internal quotation marks and citation omitted). In particular, a defendant will "'rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255,'" United States v. Borrero-Acevedo, 533 F.3d 11, 17 (1st Cir. 2008) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9 (2004)), because such errors seldom result in the type of "complete miscarriage of justice" or proceeding "inconsistent with the rudimentary demands of fair

-21-

procedure" that deserves redress under the statute, see Timmreck, 441 U.S. at 784 (finding the court's failure to inform defendant of special parole term, in violation of Rule 11, was not a fundamental defect).

Moreover, a defendant usually gets only "one complete round of collateral review" under § 2255. Melton v. United States, 359 F.3d 855, 857 (7th Cir. 2004); see Munoz v. United States, 331 F.3d 151, 153 (1st Cir. 2003) (per curiam). Second or successive § 2255 motions are severely limited and require certification by the appropriate court of appeals. 28 U.S.C. § 2255(h); see Castro v. United States, 540 U.S. 375, 377, 382 (2003); Munoz, 331 F.3d at 153. Accordingly, though we may choose to recharacterize a motion styled otherwise as falling under § 2255 based on its content, Trenkler v. United States, 536 F.3d 85, 97 (1st Cir. 2008) (compiling cases), we must be mindful that doing so may deprive a defendant of his chance to bring a second, possibly stronger claim under that statute, see Castro, 540 U.S. at 377, 382; id. at 387 (Scalia, J., concurring).[21]

---

[21] This risk prompted the Supreme Court to limit the courts' recharacterization powers with respect to pro se litigants (who, presumably, are less aware of the consequences of recharacterization than those with counsel) in the following way:

> [T]he court cannot . . . recharacterize a pro se litigant's motion as the litigant's first § 2255 motion unless the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's "second or successive"

-22-

Against this backdrop, we choose not to recast Sevilla's February 22 motion in a § 2255 mold. No one below - not Sevilla, not the government, and certainly not the district judge - considered the motion under § 2255. Before us, only the government says we should view the motion under § 2255. This was Sevilla's motion, not the government's, and the important concerns outlined above counsel against our recharacterizing the motion under that statute.

Accordingly, we find that the February 22 motion — which we view as decided only pursuant to Rule 35(a) — did not provide the judge with authority for his post-February-8 actions by way of § 2255, and the January 26 order remained the final order of the court.[22] We therefore need not reach Sevilla's arguments that (1)

restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing.

Castro, 540 U.S. at 377, 383 (emphasis in original).

[22] Sevilla argued the district judge lost power to act in his case after he filed his first notice of appeal on February 22 challenging both the February 8 amended sentence and the February 22 order purporting to vacate that sentence (though it was not until March 27 that he amended his appeal to include challenges to the original judgment and subsequent orders and judgments). "As a general rule, with only limited exceptions, entry of a notice of appeal divests the district [judge] of jurisdiction to adjudicate any matters related to an appeal." United States v. Martin, 520 F.3d 87, 97 (1st Cir. 2008) (internal quotation marks and brackets omitted) (quoting United States v. Distasio, 820 F.2d 20, 23 (1st Cir. 1987)). "This rule applies with equal force to sentencing." Distasio, 820 F.2d at 23. Thus, Sevilla says, his notice of appeal suspended the judge's power to modify his sentence, and all the judge's later actions were null and void. Sevilla does not explain how his later-in-time February 22 notice of appeal could have

the supplemental plea colloquy was defective; (2) the final sentence imposed was unreasonable; and (3) the district court erred in not granting Sevilla's February 22 recusal and <u>Santobello</u> requests. Rather, we now turn to Sevilla's direct appeal of the January 26 judgment.

## B. The Initial Guilty Plea

Most curiously, before us, Sevilla seems to have forgotten what brought him here in the first place. At the February 22 hearing, when the district judge asked Sevilla what he wanted to do about alleged Rule 11 defects in the initial plea colloquy, Sevilla insisted he wanted to address those defects on appeal rather than reopen the plea proceedings. However, he says little in his brief about the impact of Rule 11 errors in the initial colloquy on the first judgment, and instead focuses his attacks on purported errors at the supplemental plea level.

Arguments raised in only a perfunctory and undeveloped manner are deemed waived on appeal. <u>Rodríquez</u> v. <u>Municipality of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). Sevilla's entire argument about the effect of Rule 11 errors in the first colloquy on the first judgment is as follows:

---

divested the judge of jurisdiction for the earlier-in-time February 22 order. But because we find the judge lacked authority pursuant to Rule 35(a) for his post-February-8 actions anyway, we need not spin our wheels trying to pin down Sevilla's argument on this point.

-24-

Pursuant to this Court's opinion in [United States v. Ortiz-Garcia, 665 F.3d 279, 287-89 (1st Cir. 2011),] the District Court's failure to inform [Sevilla] at the change of plea hearing that the maximum sentence for [Count Two] was life imprisonment instead of the 5 years mentioned mandates setting aside the final judgment entered on [January 26], where a life sentence was imposed on [Count Two]. . . . . The Change of Plea transcript does not inform him of a maximum time of life imprisonment and [it] is by no means clear he would have [pleaded] guilty under those circumstances. The case should be remanded for resentencing before a different District Court judge. (Emphasis added.)

Though Sevilla has identified an error and a possible argument — that he might not have pleaded guilty but for the error — he has done so only "in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Zannino, 895 F.2d at 17. This we will not do. Id.

As a result, Sevilla's Rule 11 claims are not merely forfeited and subject to plain error review — as they would be because Sevilla did not object on Rule 11 grounds during the initial colloquy or move to withdraw his plea in the district court.[23] See United States v. Anderson, 745 F.3d 593, 598 (1st Cir.

---

[23] Judge Torruella says "Sevilla had no reasonable opportunity to discover and raise the Rule 11 error during the initial sentencing hearing or prior to the sentence's imposition" because the life term on Count Two was not imposed in writing until January 26, 2012 — the day after the sentencing hearing. However, this overlooks Sevilla's failure to object at the plea colloquy on August 9, 2011 — when the error occurred — or anytime thereafter before the sentence was imposed. Though Sevilla did eventually raise Rule 11 issues before the district court and move to withdraw his plea, it was not until his February 22, 2012 motion — after

-25-

2014); United States v. Ortiz-Garcia, 665 F.3d 279, 285 (1st Cir. 2011) (reviewing underlying Rule 11 claim for plain error because defendant failed to object to the error or move to withdraw his plea in the district court); Igartúa v. United States, 626 F.3d 592, 603 (1st Cir. 2010) ("[A]rguments that are not raised in a timely manner are forfeited," and "[p]lain error review may be available for forfeited arguments."). Rather, because Sevilla did not adequately challenge these errors on appeal, his Rule 11 claims are waived entirely. See Anderson, 745 F.3d at 598; Igartúa, 626 F.3d at 603 (explaining that plain error review "is seldom available for claims neither raised below nor on appeal").

Though we may, on rare occasion, exercise our discretion to address waived arguments — for instance, when they become available only as a result of intervening changes in law — we see no reason to do so here. See Anderson, 745 F.3d at 598; Igartúa, 626 F.3d at 603 ("Review is unavailable for waived arguments unless the court engages in the rare exercise of its power to excuse waiver." (internal quotation marks and citation omitted)).

_____

sentence had been imposed and after the district judge had sua sponte recognized and attempted to correct the Rule 11 error (though he lacked power to do so under Rule 35). And when the judge asked Sevilla at the hearing on that motion if indeed he wanted to reopen the hearing, Sevilla's counsel responded that while Sevilla wanted to "stand[] by all his arguments in the [February 22 motion]," he "[did] not want to reopen the hearing," and instead wanted to file an appeal, as he did later that day. Accordingly, were Sevilla's Rule 11 claims not waived before us, they would at least be forfeited.

Furthermore, even if we did exercise our discretion to hear Sevilla's Rule 11 claims, they would not survive the high hurdle of plain error review.  See Anderson, 745 F.3d at 598 (citing United States v. Padilla, 415 F.3d 211, 218-19 (1st Cir. 2005) (en banc)).[24]  Thus, we turn to Sevilla's first sentence.

## C. First Sentence

---

[24] To demonstrate plain error, Sevilla would need to show that "(1) [a Rule 11] error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error 'seriously affected the fairness, integrity or public reputation of judicial proceedings.'"  Ortiz-Garcia, 665 F.3d at 285 (brackets omitted) (quoting Rivera-Maldonado, 560 F.3d at 19). To satisfy the third prong, Sevilla must demonstrate there is "'a reasonable probability that, but for the error, he would not have entered the plea.'"  Id. at 286 (quoting Dominguez Benitez, 542 U.S. at 76).

Assuming the judge plainly erred by failing to advise Sevilla that Count Two carried the possibility of a life sentence, see Fed. R. Crim. P. 11(b)(1)(H), Sevilla nevertheless cannot satisfy the third prong of the plain error test.  To succeed, Sevilla would have to demonstrate that, if the judge had informed him of Count Two's maximum penalty, there is a reasonable probability he would not have pleaded guilty.  But the plea agreement Sevilla signed explicitly stated the correct maximum penalty, and he assured the judge during the colloquy that he understood the maximum penalties listed in that agreement.  Cf. Ortiz-Garcia, 665 F.3d at 285, 288 (finding a reasonable probability that defendant would not have entered guilty plea but for Rule 11 error where plea agreement did not include maximum penalty and court did not mention maximum penalty at change-of-plea hearing).  So Sevilla cannot meet the third prong, and the judge's failure to warn Sevilla of Count Two's maximum penalty was not plain error.

As for the other alleged Rule 11 violation — the judge's failure to warn Sevilla he was ineligible for parole — Rule 11 does not require a judge to inform a defendant of his parole ineligibility.  See Johnson v. United States, 650 F.2d 1, 4 (1st Cir. 1981).  Thus, this omission was not error — plain or otherwise.

Having found that the district judge lacked authority to do what he did after issuing the original January 26 judgment — with the result being that the initial plea remained intact — we originally remanded with instructions to reinstate the first sentence, a life sentence.[25] As we stressed, this was not an unfair result because we had believed counsel had — on our instructions — certified that Sevilla understood this outcome was a risk of pursuing his appeal. At oral argument, we had explicitly asked Sevilla's counsel if Sevilla understood that this appeal could subject him to an increased sentence. And after counsel submitted an unresponsive motion that did not address whether Sevilla understood the risks, we entered a written order again instructing counsel to inquire whether Sevilla wished to pursue the appeal even though "re-sentencing in this matter presented the risk to [Sevilla] of receiving a sentence greater than his current sentence of 405 months and up to life imprisonment, particularly if the district court were to consider either [Sevilla's] alleged involvement in the 'Pitufo' murder or calculate a base sentencing level and make appropriate upward departures." (Emphasis in

---

[25] We held — and still hold — that the judge did not abuse his discretion by considering the Pitufo murder information at Sevilla's first sentencing hearing because the judge is authorized by statute to consider this type of relevant evidence about Sevilla's background, character, conduct, history, and characteristics. See 18 U.S.C. §§ 3553(a)(1), 3661. Because Sevilla failed to argue any other problem with the sentence, the sentence would ordinarily stand.

original.)  Counsel filed a second motion confirming that Sevilla wanted to proceed despite the risk.

Writing in support of Sevilla's petition for panel and en banc review, counsel now says he did not appreciate that Sevilla faced the risk that the initial punishment of life imprisonment would be reinstated by this court, and the case remanded.  And because he misunderstood our request, counsel only warned Sevilla that remand might result in a higher sentence, not that the initial sentence might be reinstated by us.  Given this development, we modify the panel opinion, simply vacate the sentence imposed,[26] do not ourselves reinstate any sentence, and remand for resentencing by the same judge.[27]

---

[26] Sevilla's petition for panel and en banc review ("the petition," for easy reading), with the support of an amicus curiae, argues that our prior opinion clashed with Greenlaw v. United States, 554 U.S. 237 (2008).  Given our result here, we need not — and so do not — decide whether Sevilla and his amicus are correct.

[27] Contrary to what Sevilla says in his petition, the judge has never "confessed error" or said that consideration of the Pitufo murder was improper.  And as we hold, the judge's proper consideration of that murder does not, standing alone, demonstrate bias warranting the judge's disqualification.  So Sevilla's argument that the judge abused his discretion by refusing to disqualify himself, to the extent it relies on the judge's consideration of this information, fails.  See United States v. Snyder, 235 F.3d 42, 46 (1st Cir. 2000) (explaining that we apply an abuse of discretion standard when a trial judge refuses to recuse himself).  Because the judge also properly took into account the Pitufo murder's impact on the community during sentencing, see United States v. Politano, 522 F.3d 69, 74-75 (1st Cir. 2008) (explaining that the sentencing judge can consider the characteristics of the community in which a defendant's conduct arose and the conduct's impact on the community), the judge likewise did not abuse his discretion by refusing to disqualify

-29-

## CONCLUSION

With our work finished, we **<u>vacate</u>** all judgments and orders of the district court and **<u>remand</u>** to the same judge for resentencing consistent with this opinion.


**-Concurring and Dissenting Opinion Follows-**

---

himself on that basis.

From all this we see no reason for us to direct that a different judge handle the remand. "Ordinarily, district judges are free to keep or to reassign remanded cases in accordance with local rules and practice[.]" <u>United States</u> v. <u>Bryant</u>, 643 F.3d 28, 35 (1st Cir. 2011); <u>see</u> <u>also</u> D.P.R. Crim. R. 107 (declaring that "[c]ases remanded for resentencing shall be assigned to the judge who imposed the vacated sentence, unless otherwise ordered by the court of appeals"). Ultimately we believe the original judge can sentence Sevilla fairly if he opts to keep the case, and so we do not agree with Judge Torruella that a remand to the original judge would be "an exercise in futility."

**TORRUELLA, Circuit Judge** (Concurring in part, Dissenting in part). Carlos Sevilla-Oyola ("Sevilla") was sentenced by the district court to 405 months in prison. On appeal, he brings numerous errors to our court's attention. The majority, finding several of these claims meritorious, initially granted a most unusual form of "relief" -- life in prison. Upon panel rehearing, the majority recognized this irrational result and now withdraws its opinion, leaving in its place a revised opinion which vacates Sevilla's sentence and remands to the same judge for resentencing. Outside of this revised result, however, the court's analysis on the merits of Sevilla's appeal remain unchanged. While I commend the majority for correcting its initial error and vacating Sevilla's sentence, I strongly disagree with its reasoning in reaching this result. Moreover, I disagree with the decision to remand the case to the same judge. Sevilla should be resentenced by a different judge, one that does not have any preformed opinions about this case.

## I. The Comedy of Sentencing Errors

This tale of judicial woe begins at Sevilla's plea colloquy on August 9, 2011. There, the sentencing judge informed Sevilla, correctly, that he faced a statutory maximum of eighty years for Count 1 of his indictment, conspiracy to possess narcotics with intent to distribute, pursuant to 21 U.S.C. § 841(a). The judge, however, failed to inform Sevilla of the

-31-

statutory maximum for Count 2 of his indictment. Although a conviction for aiding and abetting in the use and carry of a firearm in relation to a drug-trafficking crime, pursuant to § 924(c)(1)(A), is punishable by a term of life in prison, the judge only informed Sevilla that Count 2 carried a term of "60 months mandatory." Sevilla pleaded guilty to both counts.

Sentencing proved a confusing process, replete with mistakes and misstatements on the part of the sentencing judge. It began on January 25, 2012, when the sentencing judge orally pronounced Sevilla's sentence. As recited, the sentence was as follows: "life imprisonment, and that will include of course the consecutive sentence that had to be imposed on the firearms, because it would be ridiculous to impose a life term plus five years. That doesn't make any sense."[28]

On January 26, 2012, the sentencing judge set this oral sentence down in writing. In apparent contrast to the prior day's pronouncement, the written sentence imposed a term of 327 months on Count 1 and life imprisonment on Count 2. The judge explained that

---

[28]Although this statement strongly suggests that Sevilla was sentenced to life imprisonment on Count 1 and a five-year term on Count 2, the next day the sentencing judge proffered a different explanation. He had simply forgotten to apportion the sentence between the counts. See United States v. Zavala-Martí, 715 F.3d 44, 51 & n.6 (1st Cir. 2013). If read as imposed, without the benefit of the sentencing judge's subsequent written clarification, the life sentence on Count 1 would have exceeded the statutory maximum of eighty years.

his oral pronunciation of the sentence had been a misstatement, requiring correction by way of apportionment.[29]

On February 1, 2012, Sevilla filed a motion seeking a correction, reduction, or modification of his sentence. Before that motion was considered, however, the sentencing judge independently undertook to correct additional errors in Sevilla's sentence. On February 8, 2012, the judge issued a written order. Therein, he stated that although he had "intended to enter an Order apportioning the sentence to 80 years on Count 1 (960 months)," he had mistakenly entered a sentence of 327 months.[30] In the same order, the judge acknowledged that Count 2 of the written sentence, subjecting Sevilla to life in prison, also "suffer[ed] from a defect": when the judge conducted Sevilla's plea colloquy he failed to mention that this count could carry a maximum term of life in prison. Undertaking to correct both of these mistakes, the judge entered a new sentence. This time, Sevilla was sentenced to 960 months' imprisonment on Count 1 and 60 months' imprisonment on Count 2. The judge purported to act under Federal Rule of Criminal Procedure 35(a).

---

[29]The sentencing judge explained that he had intended "to look at the two counts together and, after making the corresponding departures, sentence the Defendant to life imprisonment." As modified, the sentence imposed was not a combined term of life imprisonment, however, but a combined term of life-plus-327-months.

[30]Correcting this "typographical" error increased Sevilla's sentence on Count 1 by fifty-two years and nine months.

On February 22, 2012, Sevilla filed another motion, specifically noting the defective Rule 11 plea colloquy and seeking to withdraw his plea. A hearing on this motion was held the same day. At this hearing, Sevilla stated that he could seek to appeal the sentence rather than undergo additional corrections at the district-court level. The sentencing judge admitted that Sevilla could utilize appellate review, but attempted to dissuade him from doing so:

> [COUNSEL]: . . . [H]e could proceed to file a Notice of Appeal today, and that would be his right to proceed.
> THE COURT: He could, and you are going to get with that to where we are now, a remand for a -- a remand to strike the plea and setting the matter again in the normal course of events.
> [COUNSEL]: All right. In light --
> THE COURT: For new plea negotiations or for whatever, trial, as the case may be.

Eventually, the sentencing judge extended Sevilla's right to appeal by thirty days. Sevilla agreed with this course of action, but stated that he intended to file a "protective Notice of Appeal," so as to preserve his claims in case the court of appeals later determined the judge was, indeed, without power to resentence. With both Sevilla and the government in agreement that the plea colloquy was defective, the judge then issued an order "set[ting] aside the sentence imposed, as well as the plea colloquy that resulted in the Defendant's entry of a plea of guilty."

On February 28, 2012, the sentencing judge published an order that, among other things,[31] set forth a schedule for a supplemental plea colloquy. Sevilla filed another motion, asserting that the sentencing judge had no power to conduct a supplemental plea colloquy or enter additional modifications to his sentence, as Federal Rule of Criminal Procedure 35(a) was not an appropriate vehicle through which to correct Rule 11 errors.

On March 6, 2012, the sentencing judge responded, stating that the "Opinion and Order of February 28, 2012, should have made clear that Rule 35(a) and Rule 11 were not the exclusive reasons for setting aside the sentence, as defendant contends."[32] The judge claimed to have acted, as well, under a grant of common-law authority established in a Supreme Court case from 1931. See United States v. Benz, 282 U.S. 304, 306-07 (1931).

On March 8, 2012, the judge conducted a supplemental plea colloquy. Sevilla objected, claiming that the initial deficiencies in his plea could only be corrected by conducting a completely new

---

[31]The sentencing judge also listed eight reasons why he would not consider the "Pitufo murder" in crafting a modified sentence. As the majority notes, it was within the sentencing judge's discretion to determine whether or not consideration of this uncharged conduct was appropriate. Here, he ultimately determined it was not.

[32]Although "not unsympathetic to the significant time pressures felt by the district courts as they manage heavy dockets with limited resources," see United States v. Millán-Isaac, 749 F.3d 57, 73 (1st Cir. 2014), I am significantly concerned that such repeated claims of mistake and omission would hamper any defendant's ability to thoroughly understand and respond to the sentence imposed.

colloquy, not by simply undertaking to supplement the first.  The district court disagreed, finding "no point in repeating" what had been said seven months before, in August 2011.  Finally, on March 13, 2012, the judge sentenced Sevilla again.  This time, he imposed a term of 345 months on Count 1 and sixty months on Count 2.  Sevilla filed another notice of appeal, bringing his claims before our court.

## II. <u>The Rule 11 Error and Its Impact</u>

Sorting through this procedural mess, the majority concludes, and I agree, that the court had no power under Rule 35(a) to impose either the second or the third sentence.[33]  That, however, is where our agreement in the analysis ends.  Reasoning that Sevilla did not properly challenge the Rule 11 plea colloquy error either before the district court or on appeal, the majority continues to conclude that Sevilla's first sentence is justifiable, despite ultimately vacating the sentence on different grounds.  Taking this analysis to its logical end, therefore, the majority appears to suggest that, had the miscommunication at oral argument before us not occurred, it would have struck down a prison term of slightly under thirty-four years and put in its place a term of life-plus-327-months.  In other words, the majority's revised

---

[33]For the sake of clarity, I refer to both the original oral iteration of Sevilla's sentence and its corrected written form as a single sentence, the first of three.  As I note below, however, there are significant conflicts between these two versions of Sevilla's sentence that materially impact its legality.

opinion, which now reverses course, vacates Sevilla's sentence, and remands for resentencing, has nothing to do with the legality of Sevilla's first sentence.[34]  Although I agree Sevilla's sentence must be vacated and that he is entitled to be resentenced, with due respect, I find the majority's analysis rejecting Sevilla's substantive claims regarding the validity of his first sentence to be supported by neither law nor reason.

## A. Appellate Waiver

The majority states that Sevilla "says little in his brief about the impact of Rule 11 errors in the initial colloquy." I disagree.  Sevilla's brief quite plainly makes this argument:

> Pursuant to this Court's opinion in [United States v. Ortiz-García, 665 F.3d 279, 287-89 (1st Cir. 2011),] the District Court's failure to inform Sevilla-Oyola at the change of plea hearing that the maximum sentence for [count] two was life imprisonment instead of the 5 years mentioned mandates setting aside the final judgment entered on 1/26/12, where a life sentence was imposed in count two. . . . The Change of Plea transcript does not inform him of a maximum time of life imprisonment and

---

[34]I know of no other case -- and the majority cites to none -- in which an appellate court undertook to put in place a higher sentence than that from which the defendant's appeal was taken. Indeed, absent a cross-appeal by the government, such action may be unconstitutional. See Greenlaw v. United States, 554 U.S.237, 244-45 (2008) ("[A]n appellate court may not alter a judgment to benefit a nonappealing party. . . . [I]t takes a cross-appeal to justify a remedy in favor of an appellee.").  While Sevilla's sentence is vacated for, essentially, lack of notice, future defendants will not be so fortunate.  I hope the rationale of the majority's opinion does not create a chilling effect such that future defendants are made fearful of bringing even meritorious claims on appeal.

> [it] is by no means clear he would have
> plead[ed] guilty under those circumstances.
> The case should be remanded for resentencing.
> (emphasis added)

This passage -- appearing in the "argument" section of Sevilla's brief -- is also foreshadowed in his presentation of the facts. Therein, Sevilla states that the sentencing judge "failed to advise [Sevilla] that he faced a potential life sentence as to count two, informing him only [that] 'you have a consecutive term of imprisonment of I think it's five years on account of firearms.'"

It is true, of course, that arguments raised only in a perfunctory and undeveloped manner are deemed waived on appeal. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Sevilla's argument, however clearly falls outside the scope of our waiver doctrine. Compare United States v. Salimonu, 182 F.3d 63, 74 n.10 (1st Cir. 1999) (deeming waived a claim made "without argument or citation to case law"), with United States v. Dunbar, 553 F.3d 48, 63 n.4 (1st Cir. 2009) (finding that, even where a claim was not stated "artfully" it was not waived where the appellate brief identified relevant facts and cited relevant case law), and Holmes v. Spencer, 685 F.3d 51, 66 (1st Cir. 2012) (holding waiver inappropriate where an appellant's brief "reveals enough of the raw materials" underlying a claim so as to allow the court to have "no trouble reading" his argument).

Sevilla has identified a specific error. See Fed. R. Crim. P. 11(b)(1) ("[T]he court must inform the defendant of, and

determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release[.]").  He has provided on-point case law.  See Ortiz-García, 665 F.3d at 287-89.  He has assessed the identified error under the appropriate doctrinal test.  See United States v. Raineri, 42 F.3d 36, 41-42 (1st Cir. 1994) (considering whether Rule 11 error influenced the defendant's decision to plead guilty). In sum, his presentation -- succinct though it may be -- is in no way grounds for waiver.  United States v. Sepúlveda-Contreras, 466 F.3d 166, 170 n.4 (1st Cir. 2006) ("This is not a situation where we are forced to piece together [the defendant's] argument for him, and we therefore find no waiver." (internal citation omitted)).

In fact, the majority admits that Sevilla identified "an error and a possible argument."  Nonetheless, omitting mention of the fact that this argument was also undergirded by specific reference to case law, it goes on to baldly assert that Sevilla's claim was pleaded "in the most skeletal way, leaving the court to do counsel's work."  See Zannino, 895 F.2d at 17.  Given that Sevilla has identified a factual error, highlighted governing precedent, and applied that law to the facts at hand, however, I fail to see what "work" has been left undone.  In light of the content of Sevilla's brief, the assertion that his claim has been waived is simply unsupported.  Cf. United States v. Watson, 695 F.3d 159, 166-67 (1st Cir. 2012) (waiving an argument presented

-39-

only as "an oblique suggestion," absent any reference to applicable case law or a governing standard); DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001) ("Simply noting an argument in passing without explanation is insufficient to avoid waiver.").

If our standard for escaping waiver required that arguments be pled with the highest degree of craftsmanship, or that they be situated in the most persuasive and logical order, I might well find myself in agreement with the majority. For good reason, however, that is not our rule. As it stands, we require only that an argument be raised, and raised squarely. See, e.g., Dunbar, 553 F.3d at 63 n.4; Sepúlveda-Contreras, 466 F.3d at 170 n.4. This is a requirement that Sevilla has more than met.

The flawed nature of the majority's holding is made even more apparent when considered in context. After all, what reasonable defendant would expend any more than a succinct portion of his or her brief arguing against a sentence which had already been vacated by the sentencing judge, and for which the government was not advocating? See United States v. Ayala-Vázquez, 751 F.3d 1, 19 (1st Cir. 2014) (holding that a "perfunctory statement" was sufficient to avoid waiver where it served to put the court on notice of clearly applicable argument). That Sevilla had the foresight even to include this argument in his brief, perhaps to ward off just such an overly formalistic and strained reading as the majority now adopts, is in itself impressive. Still, the

majority demands that he should have expended more of his appellate efforts tilting at windmills.  I cannot agree that this claim was waived by Sevilla on appeal.

Indeed, if any waiver occurred, it was the government which waived the argument that Sevilla's first sentence should be reinstated.  It was not until the government's opposition to Sevilla's motion for rehearing that this position was first argued.

**B. Plain-Error Review**

The majority continues on to say that, even if Sevilla's Rule 11 claim were not waived, it would still fall under plain-error review, because "Sevilla did not object on Rule 11 grounds during the initial colloquy or move to withdraw his plea in the district court."

It is true that Sevilla did not object at his plea colloquy.[35]  However, Sevilla's February 21, 2012, motion explicitly put forth this error as grounds for withdrawing his plea.  In fact, elsewhere in its opinion, when discussing Sevilla's motion, the majority acknowledges this fact.  Recognizing that a motion to withdraw was filed, the majority instead rests its forfeiture finding on the subsequent motion hearing, in which Sevilla stated

---

[35]At Sevilla's January 25, 2012, sentencing hearing, the judge did not impose a life sentence on Count 2.  Rather, this term was first imposed in writing on January 26, 2012.  Therefore, Sevilla had no reasonable opportunity to discover and raise the Rule 11 error during the initial sentencing hearing or prior to the sentence's imposition.

-41-

that he did not "want to reopen the hearing."  A thorough review of that hearing's transcript, however, shows that Sevilla's preferred course was significantly less clear than the majority purports:

> [COUNSEL]: . . . [H]e does not want to reopen the hearing and stands by all his arguments in the pleading filed today.
> THE COURT: He doesn't want to reopen the hearing?
> [COUNSEL]: Only because of all the arguments we've presented, that we understand that the Rule 11 cannot be cured by Your Honor's Rule 35(a) motion.
> THE COURT: A Rule 11 --
> [COUNSEL]: That would be a forfeiture --

Read in context, Sevilla's statement was specifically intended to preserve on appeal the claim that the sentencing judge was acting beyond his power -- a claim the majority has since deemed meritorious.  At the same time, however, Sevilla purported to "stand by all" of his arguments, including the request to withdraw his plea.

Certainly, this portion of the record invites confusion. The apparently contradictory statements, however, do not require that our court completely ignore the fact that Sevilla clearly and expressly moved to withdraw his plea.  Cf. United States v. Isom, 85 F.3d 831, 833-39 (1st Cir. 1996) (considering on the merits a defendant's claim that he should have been able to withdraw his plea, notwithstanding the fact that the defendant vacillated between requesting the right to withdraw and stating an intent to stand by that plea).  Moreover, when presented with Sevilla's

-42-

motion, the sentencing judge -- who repeatedly proclaimed that he retained jurisdiction over the issue[36] -- considered and agreed with Sevilla's argument. That the district court attempted to effectuate the withdrawal of Sevilla's plea in a manner beyond its power is most certainly an error -- the court's own -- but it is not an error that, in my view, negates the fact that Sevilla clearly raised this claim, and it was squarely considered. In fact, I can think of no better evidence that the Rule 11 claim was raised than that which is present here: the sentencing judge awarded the relief sought. He withdrew the plea.

---

[36]When Sevilla queried whether the court's ability to withdraw the plea was impacted by a sentence already having been imposed, the sentencing judge responded, "[I]t doesn't matter." That proclamation ignores the plain text of Federal Rule of Criminal Procedure 11(d), which allows district courts to withdraw pleas for "any fair and just reason" only before the sentence is imposed. Fed. R. Crim. P. 11(d)(2)(B); see also id. 11(e) ("After the court imposes sentence, . . . the plea may be set aside only on direct appeal or collateral attack."). Thus, we might chalk this up as one more error on the growing list of the sentencing judge's missteps. It is significantly less clear, however, that -- once considered -- Sevilla's motion would consequently be subject only to plain-error review. The Supreme Court has explained that Rule 11 plays an important role in separating "meritorious second thoughts . . . and mere sour grapes over a sentence once pronounced." United States v. Vonn, 535 U.S. 55, 72 (2002) (discussing Rule 32(e), which was later moved to Rule 11). Vonn, however, dealt with a more typical case, in which the claim was first raised on appeal, and its holding was limited to those facts. See id. at 71-74 (holding that a claim brought only on direct appeal is subject to plain error review); see also United States v. Borrero-Acevedo, 533 F.3d 11, 15 (1st Cir. 2008) (citing Vonn, 535 U.S. at 58-59) (reasoning that a Rule 11 issue raised for the first time on appeal was reviewed for plain error); United States v. Jiménez, 512 F.3d 1, 3 (1st Cir. 2007) (same).

At the risk of piling on, I note that even if this court blinded itself to the clear record evidence that Sevilla's claim was raised and considered, plain-error review would be wholly inappropriate. Forfeiture of claims, after all, is not intended to be a "technicality or a trap for the indolent." Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995). To the contrary, the doctrine is intended to protect key values of judicial economy and fairness, and our court has warned not to prize consistency in its application over reason and equity. Id.; see also United States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir. 1990) ("When all is said and done, 'rules of practice and procedure are devised to promote the ends of justice, not to defeat them.'" (alteration and citation omitted)).

Our precedent acknowledges that "[c]ontext is important," United States v. Gallant, 306 F.3d 1181, 1187 (1st Cir. 2002), and that there are situations where "it simply would be unfair and unwise as a matter of policy to hold that [the defendant] forfeited the argument," id. at 1189. This case, in which the sentence was vacated by the district court and no party argues for its imposition on appeal, is clearly one such situation. After all, this is a far cry from a case where our court has been "deprived . . . of useful factfinding," Harwood, 69 F.3d at 627, or of "the district judge's insights into the point," Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990). Rather, the record on the

issue is fully developed, and the sentencing judge's view on the nature and effect of the error is more than clear. Similarly, the government was clearly put on notice of this claim and had every opportunity to respond. Harwood, 69 F.3d at 628 ("The absence of unfairness has a definite bearing on a decision to overlook this type of procedural default."). At the February 22, 2012, motion hearing, the sentencing judge specifically asked the government if it agreed that allowing Sevilla to withdraw his plea was necessary, and the government answered affirmatively. The government's appellate brief also never suggests either that Sevilla's sentence is still intact, or that it should be.

Moreover, in imposing the sentence orally, the judge did not sentence Sevilla to life in prison on Count 2. At best -- adopting the sentencing judge's rather strained explanation wholesale -- the judge imposed a general sentence, without apportionment between the counts. This robbed Sevilla of a significant opportunity to uncover and object to the Rule 11 error prior to the final imposition of his sentence. See United States v. Domínguez Benítez, 542 U.S. 74, 79 (2004) (applying plain-error review to a claim of Rule 11 error where no objection was made "[a]t the sentencing hearing"); United States v. Mateo, 179 F. App'x 64, 65 (1st Cir. 2006) ("[O]ur review is for plain error, unless [the defendant] was not afforded a sufficient opportunity to present to the district court the argument which forms the basis of

this appeal." (citations omitted)); <u>United States</u> v. <u>Cortés-Claudio</u>, 312 F.3d 17, 24 (1st Cir. 2002) ("[A] post-sentence objection is not necessarily required to preserve the issue for appeal if the defendant could not reasonably have anticipated the issue would arise until after the court ruled."); <u>see also</u> <u>United States</u> v. <u>Delgado-Hernández</u>, 420 F.3d 16, 19-20 (1st Cir. 2005) (applying plain-error review where the defendant had "ample opportunity" to object prior to the sentence's imposition (quoting <u>United States</u> v. <u>Negrón-Narváez</u>, 403 F.3d 33, 37 (1st Cir. 2005))). There is simply no sense of fairness or equity in allowing one error by the sentencing judge to shield another error from our review.[37]   Even had Sevilla's claim not been clearly raised and

---

[37]Were there any question that remand is necessary due to the sentencing procedures before the district court, I also note that where the oral and written sentences materially conflict, the oral generally controls.  <u>See</u> <u>United States</u> v. <u>Meléndez-Santana</u>, 353 F.3d 93, 100 (1st Cir. 2003) (citations omitted), <u>overruled, in part, on other grounds by</u> <u>United States</u> v. <u>Padilla</u>, 415 F.3d 211 (1st Cir. 2005).   Our court has previously held that some deviations in the terms of supervised release or restitution payments, where the defendant was on notice of those terms, were not material.  <u>See</u> <u>United States</u> v. <u>Ortiz-Torres</u>, 449 F.3d 61, 74 (1st Cir. 2006); <u>United States</u> v. <u>Vega-Ortiz</u>, 425 F.3d 20, 22-23 (1st Cir. 2005); <u>United States</u> v. <u>Ferrario-Pozzi</u>, 368 F.3d 5, 9 (1st Cir. 2004).  We have never gone nearly so far, however, as to say that a significant redistribution between counts of imprisonment was not a conflict.  Here, viewing the sentencing judge's proffered explanation about apportionment with the incredulity I believe it is due, given the clarity of his oral statement, the judge changed the sentence on Count 1 from life to 327 months and on Count 2 from sixty months to life.  In light of that clear conflict, it would be the oral sentence that binds Sevilla, and the oral sentence is clearly illegal as surpassing the stipulated and accepted statutory maximum for Count 1.  <u>See</u>, <u>e.g.</u>, <u>Blakely</u> v. <u>Washington</u>, 542 U.S. 296, 303-04 (2004).

treated, the facts here provide precisely the sort of "context" that counsels against the overly rigid application of plain-error review.  See Gallant, 306 F.3d at 1187.

Before the district court, Sevilla sought to withdraw his plea, the government did not object, and the sentencing judge awarded the relief sought.  The plea was withdrawn and the sentence vacated.  To now hold that Sevilla never brought this claim to the court's attention is quite a bait and switch.  Plain-error review is simply inappropriate in this circumstance.

**C. Remand to the District Court**

There is little question that this Rule 11 error was not harmless, such that the sentence cannot stand, see Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."), and -- as expected in a case where the government agrees that the sentence should not be imposed -- the government makes no attempt to prove otherwise.  See United States v. Olano, 507 U.S. 725, 734 (1993) (stating that the burden of proving that an error was harmless is on the government).  Moreover it is the sentencing judge who is best positioned to assess what, if any, impact the Rule 11 error had on Sevilla's understanding of his plea.  See, e.g., United States v. Cotal-Crespo, 47 F.3d 1, 5 (1st Cir. 1995) (noting that Rule 11 requires a sentencing judge to ascertain that the defendant's plea is "voluntary and intelligent" (internal quotation

marks omitted)).  On February 22, 2012, the sentencing judge made clear that, "I have to set aside the plea, because the plea is invalid.  And if the plea is invalid, the sentence is invalid."  He went on to state that he was "correcting for clear error emanating from the defective plea colloquy," and that, in this case, "the consequences of an imperfect colloquy and the potential sentence are of real significance to the Defendant."  Thus, the harmfulness of this error is clear, and nothing gleaned from the appellate record shows otherwise.  Remand is necessary for this reason alone, and not because of any procedural "misunderstanding" between Sevilla's counsel and this court at oral argument.[38]

---

[38]At oral argument, and in follow-up orders, this court asked Sevilla's counsel whether Sevilla understood that a successful appeal could result in a higher sentence.  Sevilla's counsel interpreted this question to ask whether Sevilla understood that, on remand, the district court could resentence him to a higher sentence; to this, Sevilla answered affirmatively.  Not surprisingly, Sevilla's counsel did not appreciate the court's question to imply that this court would impose a higher sentence without first remanding to the district court, as this would have been unheard of procedure.  It is this "misunderstanding" by Sevilla's counsel that forms the basis for the majority's decision to withdraw its initial opinion and remand the case to the district court.

Though I agree with the ultimate result, it is unclear to me -- and the majority fails to explain -- why this exchange necessitates remand for resentencing when the majority otherwise believes remand would be inappropriate.  If counsel had answered "no, Sevilla was not aware that this court could have imposed a higher sentence," I suspect the court would, at best, have simply given Sevilla the option of either withdrawing his appeal and accepting the final 405 month sentence imposed on March 13 or proceeding with the appeal that resulted in the majority's initial opinion.  Resentencing was never in the cards.  The decision to remand based solely on this misunderstanding, therefore, appears to me to be nothing but a

-48-

### III. <u>Resentencing Before the Same District Judge</u>

I also strongly disagree with the majority's decision to remand the case back to the same district judge for resentencing. We have previously held that "[i]t is difficult for a judge, having <u>once</u> made up his mind, to resentence a defendant." <u>Mawson</u> v. <u>United States</u>, 463 F.2d 29, 31 (1st Cir. 1972) (emphasis added). I believe this to be especially true under these circumstances,[39] where, following the court's initial sentence of life imprisonment on January 25, the district judge altered Sevilla's sentence <u>three</u> separate times: (1) to 327 months' imprisonment on Count 1 and life imprisonment on Count 2 on January 26; (2) to 960 months' imprisonment on Count 1 and 60 months' imprisonment on Count 2 on February 8; and finally (3) to 345 months' imprisonment on Count 1 and 60 months' imprisonment on Count 2 on March 13. Given the vast disparity between these sentences, as well as the litany of errors in the sentencing process as detailed above, I question whether remand will actually result in a fair resentencing or whether it will just be "an exercise in futility." <u>Cirilo-Muñoz</u> v. <u>United States</u>, 404 F.3d 527, 536 (1st Cir. 2005) (Torruella, J., concurring). Thus, "both for the judge's sake, and the appearance

---

face-saving tactic by a majority that realizes its original opinion was extremely flawed.

[39]I do not believe that the murder of Pitufo, which caused understandable outrage in the district judge, is a totally irrelevant consideration to this issue. <u>See</u> majority opinion, <u>ante</u>, at n.7.

of justice," Mawson, 463 F.2d at 31, we should follow "our longstanding policy," United States v. Curran, 926 F.2d 59, 64 (1st Cir. 1991), and require that Sevilla be resentenced before a different judge.  See also United States v. Craven, 239 F.3d 91, 103-04 (1st Cir. 2001) (remanding for resentencing before a different judge); United States v. Vélez Carrero, 77 F.3d 11, 12 (1st Cir. 1996) (same); United States v. Mercedes-Amparo, 980 F.2d 17, 20 (1st Cir. 1992) (noting the "normal practice" of "remand[ing] for resentencing before a different judge"); United States v. Canada, 960 F.2d 263, 264 (1st Cir. 1992) (same).

### IV.  Parting Words

Sevilla's sentencing was fraught with mistakes, misstatements, and omissions on the part of the sentencing judge. The unique posture of this case, arising from a sentencing process replete with errors of the district court's own making, and concerning an error that no party seeks to defend, is well fit for a simple resolution: remand for a correction of the Rule 11 error and imposition of a new sentence.  Let us not forget that the district court judge himself determined the initial sentence to be erroneous and improper, and no party had sought to defend it on appeal until the court invited such briefing following Sevilla's motion for rehearing.

Instead of acknowledging the errors of the district court, the majority continues to support the rationale behind its

-50-

original opinions's <u>sua</u> <u>sponte</u> imposition of the first sentence, and it only ultimately agrees to vacate Sevilla's sentence after being faced with motions for rehearing and a post-briefing, post-argument "misunderstanding" by counsel over a single question posed by the court.  Nevertheless, I agree with the majority's decision to vacate the sentence and remand for resentencing, notwithstanding my emphatic urging that this take place before a different judge.