# United States Court of Appeals
## For the First Circuit

No. 05-2001

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL SAEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Boudin, Chief Judge,

Stahl, Senior Circuit Judge,

and Lipez, Circuit Judge.

Jonathan R. Saxe, Assistant Federal Public Defender, Federal Defender Office, for appellant.
Mark E. Howard, Assistant United States Attorney, for appellee. Peter E. Papps, Assistant United States Attorney, and Thomas P. Colantuono, United States Attorney, on brief for appellee.

April 6, 2006

**BOUDIN**, <u>Chief Judge</u>.  In this appeal, Miguel Saez challenges the refusal of the federal district court in New Hampshire to sentence him below the guideline range.  The principal basis urged by Saez for a below-guideline sentence is his claim that another judge in the same district court gave a shorter sentence to another defendant, Gay Finley, who had been involved in the same criminal conduct as Saez.  The history is as follows.

In 2002 or 2003, Saez met Finley in a halfway house in Manchester, New Hampshire, after both had been released from prison; they moved in together after completing their terms at the halfway house and soon afterwards started using and selling heroin.  The two were arrested in November 2003 after having sold heroin on two consecutive days to a cooperating informant for the Manchester police department.

Finley confessed her guilt and agreed to assist the government, but she first said (falsely) that Saez was not involved in the drug dealing.  Confronted with audio tapes of the two drug transactions, Finley recanted her denial of Saez' involvement and cooperated truthfully with the government.  She pled guilty in June 2004 to one count of distribution of heroin, 21 U.S.C. § 841(a)(1) (2000).  On February 22, 2005, Judge Steven J. McAuliffe sentenced her to 39 months in prison.

Finley qualified as a career offender, <u>see</u> United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1 (2005);  this

categorization applies to one who is convicted of a felony that is either a crime of violence or a drug trafficking crime, and has at least twice before been convicted for such crimes, see id. § 4B1.1(a). Her career offender status automatically placed Finley in the highest criminal history category and made her subject to a higher offense level than would otherwise be applicable. Id. § 4B1.1(b).

In Finley's case, her resulting guideline range (after certain adjustments were made) was 84 to 105 months. This range seems to reflect Finley's assistance to the government (which recommended a six-level downward departure for substantial assistance, U.S.S.G. § 5K1.1) and Finley's claim that her "criminal history category substantially over-represents the seriousness of [her] criminal history," id. § 4A1.3(b)(1). In any event, her sentence of 39 months was expressly framed as a non-guideline sentence under the post-Booker regime.

Miguel Saez pled guilty in March 2005, before a different judge of the same court, Judge Paul J. Barbadoro, to one count of aiding and abetting the distribution of heroin. 21 U.S.C. § 841(a)(1); see also 18 U.S.C. § 2 (2000). Saez also qualified as a career offender, see U.S.S.G. § 4B1.1, and the amount of drugs attributed to him for sentencing purposes was 0.71 grams of heroin. Judge Barbadoro imposed on Saez a sentence of 130 months.

Saez' sentence was at the bottom of the applicable guideline range after the court applied a three-level downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1, and a two-level downward adjustment for rendering "substantial assistance" to federal authorities (which defense counsel agreed at the sentencing hearing was a fair adjustment), see id. § 5K1.1. Saez argued for a lower, non-guideline sentence based on the small amount of drugs in the count to which he pled and the lower sentence imposed on Finley. Judge Barbadoro refused and Saez has now appealed.

The framework for assessing sentences imposed after United States v. Booker, 543 U.S. 220 (2005), has been set forth in our en banc decision in United States v. Jiménez-Beltre, --- F.3d ---, 2006 WL 562154 (1st Cir. Mar. 9, 2006). There we concluded that the guideline range, taking applicable departures into account, is the starting point for analysis but that the proponent of a higher or lower sentence is free to adduce reasons and facts to support it. Jiménez-Beltre, 2006 WL 562154, at *3. On appeal, the primary issues will ordinarily be whether the sentence is reasonable and adequately explained, taking account both of the guidelines and of other statutory factors. Id. at *3-*4.

Whether the ultimate sentence is within or without the guideline range, an appeal urging unreasonableness is permitted, Jiménez-Beltre, 2006 WL 562154, at *2, as are claims that the court

erred on the law or the facts, <u>United States</u> v. <u>Robinson</u>, 433 F.3d 31, 35 (1st Cir. 2005).  The government in this case argues that a sentence within the guidelines can never be regarded as unreasonable.  We have rejected that position, <u>Jiménez-Beltre</u>, 2006 WL 562154, at *2, which (whatever the theoretical claims in its favor) is contrary to explicit language in <u>Booker</u>.  <u>See</u> 543 U.S. at 260-61.

Saez says that it was unreasonable to give him a 130-month sentence while Finley, also a career offender involved in the same drug transaction, received only 39 months from a different judge.  Relatedly, he contends that the district court "refus[ed] to consider the sentence imposed upon Finley" when calculating his sentence, and thus failed to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6).

The first problem with Saez' argument is that the district court did not "refus[e] to consider" Finley's sentence in connection with Saez' sentencing, but rather determined that Saez had not provided enough information to the court to enable it to make a meaningful comparison of the two defendants, even if it had been inclined to do so.  "In a case in which within the same conspiracy I'm sentencing both defendants," explained the judge at the sentencing hearing,

> I hope that I would at least articulate for a defendant why one got a different sentence from the other, but I don't even need to do that here because I don't know anything about that case except for a very limited amount of information that's in [Saez' presentence investigation report] and what you and [the Assistant United States Attorney] ha[ve] told me.

> \* \* \*

> I would be abdicating the responsibilities I have as the sentencing judge in this case if I were to simply take a sentence that another judge gave and use that as a baseline to either move up from it or down from it.  As I said, I can't engage in that kind of analysis, if for no other reason [than] that I simply don't have enough information to make an independent assessment as to whether I would have given that defendant the same sentence, I don't know.

"[T]he proponent of a factor that would work in the proponent's favor has to provide the basis to support it." Jiménez-Beltre, 2006 WL 562154, at \*4 (citing United States v. Derbes, 369 F.3d 579, 582 (1st Cir. 2004)).  Judge Barbadoro had detailed information about the drug crime to which both Saez and Finley pled guilty in this instance, but he had little basis for comparing Finley's criminal history with that of Saez beyond the bare fact that both qualified as career offenders.

Saez conceded in the district court (as he does on appeal) that his record was "more serious" than Finley's; yet he offered no details as to how the two defendants' records differed, saying only that giving him 51 months would account for the

difference.  Thus, one of the two main variables in sentencing--criminal history--may well have been quite different.  No valid comparison of sentences could be made without that information.

As it happens, we know that Judge McAuliffe found that Finley's own career offender status overstated her criminal history.  One reason, it appears, is that one of Finley's predicate offenses under the career offender guideline was a failure to return to a halfway house on time; although this might be treated as a violent felony under First Circuit precedent, cf. United States v. Winn, 364 F.3d 7, 12 (1st Cir. 2004), it is obviously a pretty tame piece of conduct.

Conversely, Saez' record was indeed more "serious" than Finley's.  According to the presentence investigation report ("PSR"), to which Saez did not object, Saez had previously been convicted for distribution of cocaine, first degree assault, and multiple drug possession crimes, including one count of possession while armed with a firearm.

As to cooperation, Finley and Saez each told lies; but Finley admitted her guilt and sought to protect Saez.  Saez, by contrast, asked that the federal charges against him be dropped based on Finley's false exculpation of him (although he did eventually send a letter to Finley urging her to "come clean" to

federal investigators).[1]  In the end, Finley assisted the government by cooperating as to Saez; Saez, who faced both Finley's cooperation and an audio tape showing him as a participant, had little choice but to plead guilty--for which he received a three-level downward adjustment for acceptance of responsibility and two more levels as a departure under U.S.S.G. § 5K1.1.

There is a more basic difficulty with Saez' argument which would remain even if he and Finley looked more alike than they do.  Congress did aim to reduce the unwarranted disparity in sentencing for like crimes and criminals.  See United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir.), cert. denied, 502 U.S. 969 (1991); United States v. Carr, 932 F.2d 67, 73 (1st Cir.), cert. denied, 502 U.S. 834 (1991).  But the aim was almost certainly a national uniformity focusing upon a common standard and looking to how most cases of the same kind were treated.  See, e.g., Wogan, 938 F.2d at 1449.[2]

---

[1]The prosecutor regarded the letter as being to Saez' credit, but it appears that the letter was sent after it had been determined that Finley was lying and after the audio tapes of the drug transactions had been furnished to Saez' counsel.

[2]Numerous other federal circuits have endorsed this interpretation of federal sentencing legislation.  See, e.g., United States v. Newsom, 428 F.3d 685, 689 (7th Cir. 2005), cert. denied, 126 S. Ct. 1455 (2006); United States v. Gallegos, 129 F.3d 1140, 1143 (10th Cir. 1997); United States v. Hall, 977 F.2d 861, 863-64 & n.4 (4th Cir. 1992); United States v. LaSalle, 948 F.2d 215, 218 (6th Cir. 1991); United States v. Joyner, 924 F.2d 454, 460-61 (2d Cir. 1991).  But cf. United States v. McGee, 408 F.3d 966, 988 (7th Cir. 2005) (suggesting that the district court might on remand take into account sentences imposed, apparently by the

Usually little is to be learned about <u>national</u> uniformity by pointing to the sentence of <u>one</u> other defendant. Of course, if the same judge sentences two identically situated defendants to substantially different terms, some explanation may well be required; uniformity aside, the basic requirement of rationality remains. But with different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second.

The practical objections are also considerable. A single judge sentencing two defendants for the same offense has the information before him and knows his own reasoning. By contrast, to make a valid comparison between defendants sentenced by different judges is far more difficult, as this case illustrates. Further, such a comparison opens the door to endless rummaging by lawyers through sentences in other cases, each side finding random examples to support a higher or lower sentence, as their clients' interests dictate.

At the present time, the guidelines themselves are almost certainly the best indication of ordinary practice since most sentences are within the guidelines. <u>See</u> <u>United States</u> v. <u>Boscarino</u>, 437 F.3d 634, 638 (7th Cir. 2006). The guidelines are not a perfect reflection of past practice, see <u>Jiménez-Beltre</u>, 2006 WL 562154, at *3, and other sources of information about national

_____

same judge, on a defendant's co-conspirators).

sentencing may be available.  But in this context a single example is about the weakest sort of proof of national practice that can be imagined.

Finally, Saez says a lower sentence is reasonable in light of the very small amount of drugs involved in the transaction to which he pled guilty.  Of course, his guideline range already took the reduced quantity into account.  Nevertheless, it might be argued that the quantity could still be relevant--a point we have not decided.  See United States v. Morin, 403 F.3d 41, 43 (1st Cir. 2005).

As it happens, the record indicates that Saez and Finley had been regularly dealing drugs since they left the halfway house. In fact, as Saez' PSR makes clear, he has been involved with drugs, including both possession and dealing, for virtually all the periods over the last fifteen years that he has not been incarcerated.  In any event, the district judge was not obliged to give a lower sentence because of the quantity.

Affirmed.