BARRON, Circuit Judge,
concurring in part and dissenting in part.
I fully join the majority’s persuasive analysis save for one part, regarding sentencing, where I see things somewhat differently.
I.
The defendant, Reyes, contends that he has been treated disparately in sentencing from his co-conspirators for no good reason. And the majority is understandably troubled — as am I — that he was.
Reyes points to the fact that a number of his co-conspirators stipulated in their plea agreements — as he did in his — to a relatively small amount of drugs. But while those co-conspirators were sentenced on the basis of those stipulated quantities, the District Court refused to accept Reyes’s stipulation.
As a result, the District Court used a dramatically higher drug quantity in calculating Reyes’s base offense level under the Sentencing Guidelines. The District Court set Reyes’s base offense level at 38 due to the higher drug quantity it found should be attributed to him. That level of 38 was much higher than that assigned to some number of his co-conspirators, who received base offense levels of 28 or 30 in consequence of the low drug quantity amounts to which they had stipulated in their plea agreements and which the District Court had accepted in calculating their guidelines ranges and thus in determining their sentences.
Moreover, by assigning this higher base offense level to Reyes (due to the higher drug quantity attributed to him), the sentencing judge assigned a much higher guidelines calculation to Reyes. And, in consequence, Reyes received a sentence on the drug conspiracy count of 360 months, which was far greater than his coconspira-tors’ sentences (ranging from 108 months to 151 months).[33] Even the co-conspirator *480 who the District Court acknowledged was the conspiracy’s true leader only received a prison sentence of 324 months on the drug conspiracy count. Yet Reyes was not identified in either the indictment or the plea agreement as being as high up in the conspiracy’s hierarchy as others who received lesser sentences based on guidelines calculations that rested on the acceptance of low drug-quantity stipulations. Hence, Reyes contends that his sentence reflects an impermissible disparity in the way he was treated relative to other co-conspirators.
But while I agree with the majority that we should vacate and remand the sentence, the complexities underlying the kind of follow a somewhat different analysis in getting to that result. And the consequence of this different analysis is that I would allow the District Court more discretion on remand to explain the basis for this sentence than the majority seems willing to allow.
II.
As the majority recognizes, the mere fact that a defendant is sentenced differently from his co-conspirators is not a reason to conclude that he has been sentenced impermissibly. As we have explained many times before, the sentencing statute aims primarily at addressing nationwide disparities, not ensuring equal treatment among co-conspirators. See, e.g., United States v. Reverol-Rivera, 778 F.3d 363, 366 (1st Cir.2015). And here there is no question that the sentence imposed on this defendant is in line with the sentences received by defendants who engage in the same conduct in which he was found to have engaged. After all, he was sentenced within a guidelines range that was itself predicated on a base offense level pegged to the quantity of drugs involved in the conspiracy for which he was responsible. And the interest in uniformity supports keying the base offense level in a drug conspiracy to drug quantity. Such keying avoids the disparity in treatment that could arise if the base offense levels — and thus the resulting recommended sentencing ranges — were not so keyed.
But the fact that the sentencing statute aims primarily at addressing national disparities does not mean that the statute aims exclusively at addressing that concern — a point we have also made numerous times. See, e.g., id. And so a sentencing disparity can arise from the disparate sentences handed out to co-conspirators— even if all received sentences that were in line with the guidelines.
The question, then, is whether there was such a disparity here, given the harshness of Reyes’s sentence relative to those that some co-conspirators received. And that in turn raises the question whether there is something wrong with treating Reyes as having known about such a large drug quantity when others, also high up in the conspiracy, were sentenced as if they did not have such knowledge.
The simple answer is that there is certainly nothing wrong with this outcome if Reyes is differently situated in some relevant way from those co-conspirators whose stipulations as to drug quantity were accepted. See id. (“[Djifferences in culpability can justify disparate sentences among co-defendants-”). But, unfortunately, the answer is not in fact so simple *481 in a case like this one. And that is because of the difficulty in determining what should suffice as a showing that a defendant is differently situated — and thus not identical — to his co-conspirators in such circumstances.
The sentencing statute itself offers little guidance. See 18 U.S.C. § 3553. It instructs us to avoid “unwarranted” disparities in sentences. See id. § 3553(a)(6) (“The court, in determining the particular sentence to be imposed, shall consider ... the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.”). But it leaves unclear exactly what avoiding unwarranted sentencing disparities means with respect to calculations made under non-binding sentencing guidelines that in turn depend on calculations drawn from judgments about whether to accept generous stipulations or not.
To be sure, guidelines calculations that are wrong can lead to sentencing errors, precisely because the sentence may be imposed only after a correct guidelines calculation is made. See Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). But the sentencing range recommended by the guidelines is not binding, and § 3553(a)(6) states that it is the “sentence” that must not be disparate. So the statute says little that bears directly on our issue, beyond making clear that disparities in sentences (of some kind) should be avoided.
Similarly, it is clear that factual findings on which guidelines calculations rest may be reviewed for clear error. See United States v. Gracie, 731 F.3d 1, 2 (1st Cir.2013). And so factual findings that are clearly wrong — when challenged by the defendant — cannot support a sentence. But the defendant here does not claim that the District Court clearly erred in finding him responsible for the entire quantity of drugs in the conspiracy. (Perhaps he could have .made such a claim, though I doubt it would have been persuasive, based on the evidence on the record of his involvement in this conspiracy and the quantity of drugs sold by the conspiracy.) Instead of challenging the factual basis for finding that he, in fact, was responsible for such a large amount of drugs, the defendant contends only that even though such a finding of fact would not be clearly erroneous, it was error for the District Court to attribute that quantity to him when the District Court could have' accurately attributed that same quantity to the other conspirators but did not do so.
Precedent also offers little guidance. The truth is that — for as many times as we have said that identically situated co-conspirators may not be sentenced disparately — I have yet to find a case before this one in which we have actually concluded that co-conspirators were identical yet were disparately sentenced.[34] Nor have I found a case suggesting with any clarity how to go about determining what makes co-conspirators identical or distinguishable in a case with facts, meaningfully analogous to ours. And a search beyond our own Circuit turns up nothing useful either. So while there are cases (scores really) noting how defendants may be different — for ex *482 ample, because one pled and another did not, see United States v. Ayala-Vazquez, 751 F.3d 1, 31 (1st Cir.2014) — I have not come across any precedent (and the parties cite to none) that seems to give much guidance here.[35]
To be sure, I do not doubt that a clear disparity would exist if two people with identical roles in the same conspiracy and with identical offense levels and identical criminal histories — and thus identical guideline sentencing ranges — were sentenced by the same judge to different terms of imprisonment without an adequate justification. See United States v. Saez, 444 F.3d 15, 19 (1st Cir.2006). But that is not our case.
Reyes received the longest sentence of any of the conspirators. But he had a higher criminal history than most other conspirators. We thus deal here with the very different question of how to administer the calculation of the guideline sentencing range itself on the basis of what seems to be a claim of disparate fact-finding leading to disparate guidelines’ calculations of base offense levels. And that is the question for which guidance is wanting.
Reyes does argue that, on disparity grounds and disparity grounds alone, the District Court should have held him to the stipulated drug quantity. And there is an intuitive appeal to that contention. Why should co-conspirators with roughly equivalent knowledge of the amount of drugs involved in the conspiracy be sentenced as if they in fact had different levels of awareness?
But I am nonetheless wary of mandating a rigid rule of equal treatment in determining whether stipulated drug quantities should be accepted. For although I recognize drug quantity determinations do influence sentences indirectly, insofar as guideline sentencing ranges influence final sentences, I am concerned about the risks of injecting a too-rigid disparity analysis into our sentencing review in cases of this sort, for fear of how it might affect the process of making and accepting stipulated quantity determinations.
As we have recognized, and as the record in this case reveals, guilty pleas to stipulated drug quantities serve a number of practical purposes even if they do not reflect the truth. So, too, do decisions to allow such stipulations to stand even when they are accurate only in the sense that the defendant certainly was responsible for at least that quantity (though the stipulated amounts are otherwise, sometimes wildly, understated). See United States v. Yeje-Cabrera, 430 F.3d 1, 23 (1st Cir.2005) (“Fact bargaining may arise when there are different views of the facts, counsels’ *483 ability to prove them, and their consequences.”)-
That is in part why we have said there is no constitutional problem with the prosecutor and the defendant bargaining over factual stipulations as to drug quantity. See United States v. Hall, 557 F.3d 15, 21 (1st Cir.2009). And those practical considerations also help to explain why there is also not a problem with a judge choosing to accept the bargain — at least when it does not result in a defendant taking responsibility for more than he did — even if a more-searching inquiry would show that the stipulation was generous. Simply put, fact bargaining is central to the plea bargaining system, as it provides an incentive to plea rather than go to trial, and a means of potentially reducing the harshness of the punishment that otherwise might be imposed. See Yeje-Cabrera, 430 F.3d at 25.
In shaping the scope of our review of disparity-based challenges to a sentencing judge’s decision to accept or reject factual stipulations in plea agreements that are favorable to defendants, it seems to me we should be equally sensitive to these practical considerations. Importing a rigid, substantive disparity analysis into our review of a district court’s decision to reject a bargained-for fact, I worry, may undermine the foundations on which the fact-bargaining system operates. For a district court with a strong suspicion that the real weight of drugs in a conspiracy is far higher than the factual stipulations reveal might then be in a curious position. The district court might feel the need to reject stipulations it would otherwise accept in order to maintain its discretion to impute the full weight to particular co-conspirators to be sentenced in the future. And, in turn, those involved in the bargaining might have their incentives altered, too.
Were that the consequence, I am dubious that there would be much virtue in our having altered the calculus for sentencing-judges in that way. It may be that a district court, considering the quality of cooperation of the various defendants, their particular roles in the conspiracy, and their past criminal histories, is trying to settle on individualized quantity determinations for each defendant that reflects a reasonable assessment of the individualized sentence that each warrants, given the characteristics of the defendant that the sentencing statute instructs the district court to consider. And, in the process of trying to arrive at those individualized sentences, the district court may choose, therefore, to accept certain stipulations and reject others not for no reason, but instead with an eye on the ultimate sentencing range it considers to be appropriate for each defendant in light of the considerations that the sentencing statute directs the sentencing judge to consider and that the guidelines do not otherwise seem to prohibit.
So, for example, a district court might chose to accept a low stipulated drug quantity for a conspirator with a high criminal history category. The judge might figure that the criminal history category, paired with the offense level dictated by the lower quantity, will effectively bring the defendant’s guidelines sentencing range in line with what — all things considered, including levels of cooperation — it should be under the statute. And thus, the district court might choose not to probe further into what the true amount was and accept the lower amount contained in the plea agreement. By contrast, the district court might choose to look past the stipulated amount for another conspirator whose role seemed greater but whose criminal history category was less, figuring that such an approach will, again, best capture the sentence that is appropriate for that defen *484 dant, given that defendant’s individual role and characteristics. As to that defendant, therefore, a deeper dive into the facts might seem appropriate to ferret out the higher quantity that is true.
It is far from clear to me that a district, court may not take account of such holistic sentencing judgments — when rooted in the statutory considerations set forth in 18 U.S.C. § 3558 — -when considering whether to accept or reject stipulated drug quantities that are defendant-friendly. I thus would be wary of setting a rule regarding disparities among co-conspirators in calculating sentencing guidelines that could discourage the process through which low stipulations are forged and allowed to stand, especially given the uncertain (and unbriefed) impact such a rule might have on the practical administration of the criminal justice system.
I doubt we improve things by reducing the discretion of already-restricted sentencing judges (given mandatory minimum sentences) through an approach to disparity analysis that is not sensitive to these realities. Such an approach could have the perverse effect of making a plenty-punitive criminal justice system yet more punitive still.
Having said all that, I do not read the majority to be imposing the kind of rigid approach that most worries me. This case is fact-bound, and the majority’s analysis is, appropriately, dependent on these particular facts as well. And the facts here are troubling. Nonetheless, rather than characterizing the District Court’s sentence as substantively unreasonable — that is, inherently unjustifiable — as the majority does, I prefer to analyze this case through the lens of procedural reasonableness and inadequate explanations. Doing so, I believe, poses the least risk of unintended consequences while still fulfilling our obligation to ensure that a sentence meets the “the basic requirement of rationality[.]” Saez, 444 F.3d at 19.
Of course, as the majority rightly notes, the distinction between matters of substance and procedure is less than clear in this context — and, at the margins, may not matter. But it also might, particularly with respect to the scope of remand. And here I believe that is the case. Thus, in my view, the reason we must vacate and remand is only that the District Court failed to provide an adequate explanation for its conclusion that Reyes was not identically situated to those for whom drug-quantity stipulations were accepted. I would not go so far as to say (as I read my colleagues to conclude) that no such explanation is possible on this record, and thus that on remand the District Court has no choice but to sentence this defendant on the basis of a quantity that is closely aligned with the quantities on which his co-conspirators were sentenced. In my view, my approach — by treading more lightly— best accounts for the lurking complexities that inhere in this type of disparity-based challenge.
III.
Still, I do agree with the majority that the sentence must be vacated and remanded. And so I need to say more about the nature of the disparity concern that I believe must be redressed on remand, which, in turn, requires that I describe in more detail both what I understand to be the District Court’s explanation for the sentence that it chose and why I do not believe that explanation is adequate.
The chain of logic undergirding the District Court’s sentencing in this case — as best I can tell — seems to go like this. There was a large conspiracy with many members, and they played different roles. There was an overall leader. There were *485 leaders of many drug points in various housing projects. And there were other significant participants — like Reyes — who performed neither the role of overall leader nor the leader of a particular drug point. The key for the District Court, therefore, seems to be what it suggested was the close relationship between Reyes and the overall leader of the conspiracy. And, as best I can tell, the District Court thought that relationship matters for determining drug quantity in the following way.
The overall leader of the conspiracy, José Colon de Jesus, like Reyes, stipulated to a very low drug quantity in his plea agreement. But the District Court thought that number — which was dramatically at odds with the figure contained in the presentence report — was risible. As I read the record, the District Court quite plausibly explained that Colón de Jesus was, in effect, the “Chairman of the Board” and, like the head of a large franchising corporation, “relicensed ... housing projects to people who were going to be the drug point owners of those ... different housing projects, [and] would in turn be part of his. organization.” For that reason, the District Court thought there was no way Colón de Jesus was not aware of the drug quantities involved in the conspiracy as a whole, which were plainly much larger than the stipulation reflected.
To be sure, other participants in the conspiracy plainly knew more than the stipulated quantities in their plea agreements reflected, as the District Court indicated while sentencing those co-conspirators. And some of those co-conspirators also actually ran particular housing project franchises. But the District Court concluded that Colón de Jesus was different from the' other drug point leaders in his responsibility for the whole conspiracy from its founding.
I think that distinction suffices to make Colón de Jesus — or No. 1 as he is known— distinct from the other members of the conspiracy, such that he could fairly be charged with a quantity much higher than his stipulation reflected and much higher than the stipulation reflected in his confederates’ plea agreements.[36] I reach that conclusion notwithstanding that these co-conspirator stipulations were by no means accurate accounts of what those individuals actually knew. And I reach this conclusion notwithstanding that those stipulations likely also could have been rejected for far higher quantities, perhaps including quantities yielding the highest base offense level for a drug conspiracy charge. Given the realities of fact-bargaining over drug quantities, I would not say that a sentencing judge lacks the discretion to ignore a stipulation for someone like Colón de Jesus, given his different role in the conspiracy, even though it might be hard to say that, in fact, his confederates did not also know the conspiracy involved drug amounts sufficient to raise their base offense level to be as high as his.
Since in my view the District Court had a basis for holding Colón de Jesus responsible, in calculating his base, offense level *486 under the guidelines, for a higher drug quantity than the other leaders in the conspiracy — notwithstanding the absurdly low quantities assigned to those other leaders — the question that remains is whether there is any similar rationale for treating Reyes like Colón de Jesus with respect to his quantity stipulation. The District Court seemed to think there was, and it is in the lack of clarity on that point where, in my view, the error lies.
In sentencing Reyes, the District Court was plainly concerned initially about Reyes’s potential involvement in other murders unrelated to this conspiracy, as he was concerned about the involvement of Colón de Jesus in the murders as well. But the District Court eventually made it plain in the face of objections to considering those murders that it was not basing Reyes’s sentence on the alleged murders in any respect. Instead, the sentence would rest in significant part on Reyes’s role in this conspiracy and his knowledge of the drugs involved.
In that regard, as with Colón de Jesus, the District Court was troubled, according to the transcript, by the gap between the stipulated drug quantity in Reyes’s plea agreement and the quantity attributed to Reyes in the presentence report. And so the District Court dug into that issue, rejecting several times the contention from Reyes’s counsel that the District Court was effectively bound by the stipulation in Reyes’s plea agreement due to the District Court’s prior acceptance at the sentencing of other co-conspirators of the low stipulations set forth in their plea agreements.
The District Court unfortunately was less than direct in explaining why it was rejecting this disparity-based argument for accepting the drug-quantity stipulation that Reyes and the government had made. The District Court seemed much more focused on justifying its authority to reject a stipulation, contending that it was not required to mechanically adopt all stipulations and that it could base its sentence on an understanding of the actual quantity for which Reyes was responsible and not simply the quantity set forth in the plea agreement.
But the sentencing judge eventually did get around to offering a reason for treating Reyes differently from others with respect to the quantity and for finding him to be, like Colón de Jesus, fully responsible for the full amount of drugs in the conspiracy. The District Court seemed to be suggesting that Reyes was different from these other leaders in the conspiracy because, even though he was in some respects lower down in the conspiracy’s chain of command, he was in fact so closely tied to Colón de Jesus that he should be treated differently from all the others save for No. 1 himself.
In this regard, the District Court identified Reyes as “like a Lieutenant” and “one of the right hands” of Colón de Jesus. And the District Court pointed out that Reyes worked directly with Colón de Jesus at the drug point that Colón de Jesus owned while Colón de Jesus carried out his duties as chairman of the board for the conspiracy as a whole. The District Court also , noted that testimony even showed that Reyes “look[ed] out for the stash that was kept” in Colón de Jesus’s housing project, though it is not clear to me whether the testimony referred to the entire conspiracy’s central stash house or to the stash house for just the local housing project. Finally, the District Court remarked that Reyes was apparently involved in the conspiracy for a large number of years, dating back all the way to 2005, and cited Reyes’s particular role in the conspiracy as the reason for holding him responsible for the higher quantity of drugs.
*487 But if the District Court meant to make a finding that Reyes was like a chief of staff or aide-de-camp to No. 1 — rather than like the rest of the department heads — he did not do enough to make that clear. I say that while recognizing the difficult position district judges are in, busy as they are in general and particularly when it comes to criminal sentencing. Certainly they are more burdened in issuing sentences- than we are in reviewing them.
In the face of the seeming disparity in how the District Court treated the quantity stipulated by Reyes relative to other drug point heads, it is not enough to say that Reyes should be- treated differently because Reyes is like “a” lieutenant or “one of the” right-hand men to the overall leader. That characterization does not — in and of itself — distinguish Reyes from other lieutenants and right-hand men whose stipulations were accepted. Nor did the District Court explain why he thought the conspiracy was organized in such a manner that a close aide to Colón de Jesus was plausibly more responsible for what went on than a drug point leader for an entire housing project.
So while the District Court’s observations do point the way to a possible rationale for distinguishing Reyes from the others and for treating him, like Colón de Jesus, as responsible for a higher quantity, the District Court’s explanation is too unclear and imprecise to suffice. And if the District Court meant to make some other argument about why Reyes should be treated so differently, it did not offer any such explanation.
Accordingly, I would vacate and remand for the District Court to explain why Reyes — and Reyes alone — should be treated like the conspiracy’s overall leader as to a matter so critical to determining his sentence. For while apples only need be compared to apples, the District Court has some obligation to explain why it treated Reyes, uniquely, like an orange, given that no distinction may be inferred.
Perhaps the District Court on remand would determine that no answer is possible, in which case there is no question but that the District Court would have the discretion to impose a sentence more in line with Reyes’s co-conspirators. United States v. Martin, 520 F.3d 87, 94 (1st Cir.2008) (“[District courts have discretion, in appropriate cases, to align code-fendants’ sentences somewhat in order to reflect comparable degrees of culpability... .”). But were the District Court to do so at that point, we would then have no need to probe further the limits of what, substantively, constitutes an unjustified disparity and what does not.
Perhaps, instead, the District Court would conclude that the defendant is an aide-de-camp to Colón de Jesus, and would further find that that fact makes him more responsible than his co-conspirators. Reyes could then appeal those findings to us, which we would review for clear error. Or the District Court might have some other explanation to offer for why this defendant’s stipulation — like Colón de Jesus’s but unlike the others — should be disregarded. If so, hearing it might help illuminate just what the effect on sentencing generally would be from denying the District Court the discretion to rely on such a reason for treating Reyes differently-
Whichever course the District Court might pursue on remand, I do not believe we should cut short the process by which we often proceed when we find a rationale for a sentence wanting — a process by which we point out why the explanation does not suffice and then remand for the District Court to reconsider the sentence. See United States v. Medina, 779 F.3d 55, *488 64 (1st Cir.2015); United States v. Mendez-Colon, 15 F.3d 188, 191 (1st Cir.1994); see also United States v. Cirilo-Muñoz, 504 F.3d 106, 127 (1st Cir.2007) (Lipez, J., concurring in the judgment).
IV.
By statute, we have discretion to limit (or not) the issues to be addressed on remand' by fashioning orders “as may be just under the circumstances,” 28 U.S.C. § 2106, a power we have interpreted broadly “to allow appellate courts the flexibility to adapt their mandates to the particular problem discerned on appeal and to provide an efficient and sensible solution.” United States v. Garafano, 61 F.3d 113, 116 (1st Cir.1995). But, because the problem I discern here is the lack of an adequate explanation and not the impossibility of one, and because of my concerns about adopting an overly-rigid disparity analysis with regard to drug quantity calculations for guidelines purposes, I would vacate Reyes’s sentence and remand for reconsideration and a more-fulsome explanation, based on adequate findings, rather than for imposition of a sentence based on a drug quantity like those stipulated to by some of Reyes’s co-conspirators. I thus respectfully dissent as to the majority’s disparity analysis, though I join in full the majority’s resolution of the remaining issues presented in this case.

. One co-conspirator, Carlos Sevilla Oyóla— a career offender — was initially sentenced to *480 life in prison but the District Court then changed that sentence to 327 months, 960 months, and then 345 months. United States v. Sevilla-Oyola, 770 F.3d 1, 6-9 (1st Cir.2014). We vacated and remanded, id. at 16, and the District Court ultimately sentenced Sevilla to 300 months on the drug conspiracy count.

. In United States v. Cirilo-Munoz, 504 F.3d 106 (1st Cir.2007) (per curiam), two judges voted to vacate and remand the sentence while a third voted to affirm. Id. at 107. One of the two in the majority concluded both that the District Court’s explanation was inadequate and that the defendant's sentence was substantively unreasonable for being unjustifiably disparate from a co-conspirator. Id. at 126 (Torruella, J., concurring in the judgment). The other judge concluded the explanation was merely inadequate and declined to address the substantive disparity issue. Id. at 127 (Lipez, J., concurring in the judgment).

. Reyes does cite United States v. Barnes, 602 F.3d 790 (7th Cir.2010), but that case does not help our consideration of this question in this Circuit. In Barnes, most participants in a cocaine conspiracy pled guilty with low-level quantity stipulations that the District Court accepted at sentencing. Id. at 794. Barnes was convicted after a trial and obtained the same low-level quantity stipulation from the government going in to sentencing. Id. But the District Court rejected the stipulation and imputed a much higher drug quantity to Barnes, which affected his guidelines calculation, without offering any reason for having done so. Id. The Seventh Circuit con-eluded that this disparate treatment as to quantity stipulations was error, vacated the sentence, and remanded for resentencing. Id. at 797. Barnes is of no help in our case for two reasons. First, the Seventh Circuit framed its analysis around review of the District Court's factfinding, concluding the drug quantity it attributed to Barnes was clearly erroneous, rather than around sentencing disparity per se. And second, under First Circuit precedent, Barnes, who went to trial, would have been differently situated from the co-conspirators who pled guilty. See Ayala-Vazquez, 751 F.3d at 31.

. Colón de Jesus’s sentence is not before us in this appeal, and I take no position on any claim he may bring in the future. I do note, however, that Colón de Jesus appealed his sentence to this court and we affirmed, concluding in an unpublished judgment that there was no abuse of discretion. See United States v. Colón de Jesus, No. 12-1936 (1st Cir. June 23, 2014). In particular, we rejected Colón de Jesus's argument that the District Court created an unwarranted disparity when it looked behind his stipulated drug amount and sentenced him using a higher drug quantity than was used for his co-conspirators. Id. And we did so because we concluded that Colón de Jesus, as the head of the conspiracy, was differently situated than his co-conspirators.