FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**June 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JONATHON RAY SWAN,

    Defendant - Appellant.

No. 21-8071
(D.C. Nos. 0:21-CV-00004-SWS &
2:19-CR-00009-SWS-1)
(D. Wyo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY***
_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Jonathon Ray Swan was convicted of knowingly possessing methamphetamine

with intent to distribute and of carrying a firearm during and in relation to a federal drug

trafficking crime.  This court affirmed his convictions on direct appeal, where he raised

one issue concerning jury instructions.  *See generally United States v. Swan*,

829 F. App'x 304 (10th Cir. 2020), *cert. denied.*, 141 S. Ct. 1437 (2021).  In that

decision, we summarized the evidence as follows:

> Mr. Swan drove from Cheyenne, Wyoming to Aurora,
> Colorado, for an eleven-minute stop in front of an apartment
> building on December 16, 2018.  Unbeknownst to him, a
> DEA taskforce was surveilling his journey and reported

---

\* This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

> seeing him enter the apartment building and, shortly thereafter, exit while appearing to conceal something in his front jacket pockets. Mr. Swan was stopped on his return trip and a K-9 unit alerted on his vehicle. A search of the vehicle uncovered two pounds of methamphetamine and a Charter Arms .38-caliber revolver called a "Lady Lavender" in a "natural void" below the cup holders near the driver's seat. . . . A search of Mr. Swan's phone revealed messages on the WhatsApp application indicating Mr. Swan was engaged in narcotics trafficking.

*Id.* at 304-05. To assist in their surveillance, the officers attached a GPS tracking device to Mr. Swan's Chevrolet Suburban, which he had recently purchased. Earlier, they attached a GPS device to Mr. Swan's GMC Yukon, which was damaged in a crash. The officers obtained a warrant to attach each GPS device.

After we affirmed his convictions, Mr. Swan filed a pro se motion for relief from judgment under 28 U.S.C. § 2255. The district court denied relief and denied a certificate of appealability ("COA"). Mr. Swan has filed a combined application for a COA and opening brief ("COA application") to appeal the district court's judgment denying his § 2255 motion. Exercising jurisdiction under 28 U.S.C. § 1291, we deny a COA and dismiss this matter.[1]

## I. COA STANDARD

Before he may appeal, Mr. Swan must obtain a COA. *See* 28 U.S.C. § 2253(c)(1)(B). To obtain a COA on claims the district court denied on the merits, he must make "a substantial showing of the denial of a constitutional right," § 2253(c)(2),

---

[1] We construe Mr. Swan's pro se filings liberally, but we may not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

such that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). For claims the district court denied on a procedural ground without reaching the merits, he must also show that the district court's procedural ruling is debatable. *Id.* If Mr. Swan cannot make a showing on the procedural issue, we need not address the constitutional component. *See id.* at 485.

## II. **DISCUSSION**

At the outset, we question whether Mr. Swan has adequately developed any arguments in his COA application to avoid a wholesale waiver of appellate review. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) (explaining that "[i]ssues not raised in the opening brief are deemed abandoned or waived . . . [as are] arguments that are inadequately presented" (quotations omitted)). His arguments mostly consist of observations, conclusions, and queries. But because he represents himself, we will address both his failure to raise arguments about specific claims and his minimally developed arguments regarding the remaining claims.

### A. *Procedurally Defaulted Claims*

As a general rule, a defendant who "fails to raise an issue on direct appeal . . . is barred from raising it in a § 2255 motion unless he can show" (1) "cause excusing his procedural default and actual prejudice resulting from the errors of which he complains" or (2) "that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (quotations omitted).

This rule does not apply to ineffective assistance of counsel claims. *See United States v. Galloway*, 56 F.3d 1239, 1241 (10th Cir. 1995) (en banc).

Applying this rule, the district court dismissed seven of Mr. Swan's claims. *See* ROA, Vol. 5 at 38-47.[2] In his COA application, Mr. Swan fails to mention four of those claims, and he does not argue that the default of the other three should be excused either for cause and prejudice or to prevent a fundamental miscarriage of justice.[3] He thus has not shown he is entitled to a COA on any of these seven claims. To the extent he now argues that any of these claims involved ineffective assistance of counsel, he has waived appellate review by (1) failing to present an ineffective assistance argument to the district court, and (2) by failing to argue in this court for plain error review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011).

## B.  *Claims Denied on the Merits*

In two separate orders, the district court denied the remaining nine claims—all alleging ineffective assistance of counsel—on the merits. In the first order, it denied relief on six claims regarding trial counsel. *See* ROA, Vol. 5 at 31-38. As to those six

---

[2] The court also explained why the claims would likely fail on the merits.

[3] The four claims he fails to mention concerned (1) an alleged violation of the Bail Reform Act of 1984, (2) the legality of his arraignment, (3) the trial judge's alleged conflict of interest based on the withdrawal of Mr. Swan's second court-appointed attorney, and (4) sidebar discussions at trial without Mr. Swan. The other three claims concerned (1) whether Mr. Swan's indictment violated the Speedy Trial Act, (2) the trial judge's alleged conflict of interest because Mr. Swan's third court-appointed attorney had worked with the judge at a law firm, and (3) the third court-appointed attorney's alleged entry into the jury room during deliberations.

claims, Mr. Swan fails to adequately develop any argument in his COA application that the district court erred.[4]  Despite this shortcoming, and having reviewed the record and applicable law, we deny a COA on those six claims for substantially the same reasons the district court provided.  *See id.*  In the second order, the district court denied relief on the remaining three ineffective-assistance claims.

Before we turn to those claims, we note that to establish ineffective assistance of counsel, a defendant must show (1) "that counsel's performance fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  If an issue is without merit, counsel's failure to raise it will not constitute deficient performance.  *See Davis v. Sharp*, 943 F.3d 1290, 1299 (10th Cir. 2019) (appellate counsel); *United States v. Barrett*, 797 F.3d 1207, 1219 (10th Cir. 2015) (trial counsel).

1. **Counsels' Failure to Raise Violation of Rights to a Speedy Trial**

In his § 2255 motion, Mr. Swan claimed that trial and appellate counsel were constitutionally ineffective by failing to argue that continuances of his trial violated his

---

[4] These six claims concerned (1) waiver of the preliminary hearing; (2) withdrawal of Mr. Swan's first court-appointed attorney; (3) alleged inexperience and (4) withdrawal of his second court-appointed attorney; (5) failure to challenge the legality of the GPS device, the traffic stop, and the vehicle search; and (6) failure to investigate alleged use of the GPS device attached to the Yukon to cause that vehicle to crash into a roundabout (what Mr. Swan refers to as "surveillance hacking").

statutory and constitutional rights to a speedy trial.  The district court denied relief on

both theories.  Mr. Swan has not shown that the court's ruling is reasonably debatable.

a. *Speedy Trial Act*

Because Mr. Swan was indicted after his initial appearance, the Speedy Trial Act

required his criminal trial to begin within 70 days of his January 18, 2019 indictment.

*See* 18 U.S.C. § 3161(c)(1).  The 70-day period ended on March 29, but Mr. Swan's trial,

originally set to begin on March 18, started instead on July 29, 2019.  The delay was due

to continuances the district court allowed after the withdrawal of the first and second

attorneys appointed to represent Mr. Swan.

In denying § 2255 relief, the district court determined that the delay was excluded

from the 70-day period under 18 U.S.C. § 3161(h)(7)(A), which excludes continuances

that serve "the ends of justice," such as those that allow defense counsel "reasonable time

necessary for effective preparation, taking into account the exercise of due diligence,"

§ 3161(h)(7)(B)(iv).  Because no violation of the Speedy Trial Act occurred, the district

court concluded that trial and appellate counsel were not ineffective in failing to argue

there had been one.

b. *Sixth Amendment*

The Sixth Amendment also provides a criminal defendant "the right to a speedy

and public trial."  U.S. Const. amend. VI.  To determine whether a delay violates this

right, a court must balance four factors identified in *Barker v. Wingo*, 407 U.S. 514, 530

(1972):  "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion

of his right; and (4) prejudice to the defendant."  *United States v. Margheim*, 770 F.3d

6

1312, 1325-26 (10th Cir. 2014) (quotations omitted).  The first factor "functions as a triggering mechanism, and the remaining three factors need only be assessed if the delay is long enough to be presumptively prejudicial."  *Id.* at 1326 (citation and quotations omitted)).  "[D]elays approaching one year generally satisfy the requirement of presumptive prejudice."  *Id.* (quotations omitted).

Applying this test, the district court observed that Mr. Swan's trial began seven months after his December 28, 2018 arrest on federal charges.[5]  The court determined the seven-month period was not presumptively prejudicial based on *United States v. Kalady*, 941 F.2d 1090, 1095 (10th Cir. 1991), where we were "not convinced" that an eight-month delay was presumptively prejudicial.  The district court thus did not assess the other three factors, though it did allude to the second factor in stating that "the delays were largely attributable to [Mr.] Swan," ROA, Vol. 5 at 104.  And although Mr. Swan had been arrested twelve days earlier on state charges for the same conduct, the court explained that it was his federal arrest that counted for Sixth Amendment purposes because "'[a]rrest by state authorities on state charges does not trigger the speedy trial provisions of the Federal Constitution.'"  *Id.* (quoting *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995)).  The court concluded that because there was no Sixth

---

[5] "It is either a formal indictment or information or else the actual restraints imposed by arrest that engage the particular protections of the speedy trial provision of the Sixth Amendment."  *Margheim*, 770 F.3d at 1326 (ellipsis, brackets, and quotations omitted).

Amendment violation, trial and appellate counsel were not ineffective in failing to argue

that there was.

  c. *Mr. Swan's arguments*

  Mr. Swan takes issue with excluding the delay attributable to the withdrawal of his

first court-appointed attorney, Melanie Gavisk. *See* COA Appl. at 5. Ms. Gavisk entered

an appearance on January 2, 2019, but on January 28 she filed a motion to withdraw

based on a confidential conflict of interest with another client. Mr. Swan questions

whether Ms. Gavisk should have been appointed initially if she had a conflict, and he

argues that her withdrawal was not his fault. Because Ms. Gavisk stated in her motion to

withdraw that she had only recently discovered the conflict, *see* ROA, Vol. 1 at 54, Mr.

Swan's argument fails to persuade us that reasonable jurists would find the district

court's disposition of the Speedy Trial Act theory of ineffective assistance debatable.

And even if we assume this delay was not attributable to Mr. Swan, the seven-month

overall delay was still not presumptively unreasonable under the Sixth Amendment

*Barker* analysis.

  Mr. Swan also questions why his third court-appointed attorney, Craig Silva, had

more time for trial preparation than his other appointed attorneys. *See* COA Appl. at 7.

But Mr. Swan fails to account for an April 30, 2019 status conference to reschedule the

trial. *See* ROA, Vol. 3 at 668-75. At that conference, the district court considered

Mr. Silva's estimate that he would need until July to prepare, *id.* at 670, and it addressed

various difficulties in scheduling the trial for earlier in July, *see id.* at 671-72 (discussing

criminal trials already set, unavailability of prosecution witnesses, defense counsel's

medical appointment).  Reasonable jurists would not debate that affording Mr. Silva three months to prepare for trial violated the Speedy Trial Act or the Sixth Amendment.

We deny a COA on Mr. Swan's speedy trial ineffective assistance claim.

2. **Counsel's Failure to Challenge Denial of Suppression Motion**

a. *Probable cause for GPS warrants*

Mr. Swan claimed appellate counsel was ineffective for failing to challenge the district court's order denying his suppression motion.  The district court first concluded that Mr. Swan had not shown deficient performance because there was a substantial basis to find probable cause for the warrants that allowed law enforcement to attach the GPS tracking devices to his vehicles.  *See id*., Vol. 5 at 105-06.[6]  The court therefore concluded that appellate counsel's failure to challenge the order was not deficient performance.  But even if probable cause was lacking, the district court observed that Mr. Swan had not challenged its application of the good faith exception identified in *United States v. Leon*, 468 U.S. 897 (1984).[7]  ROA, Vol. 5 at 106.  Thus even if counsel's failure to raise the probable cause issue on appeal could be considered deficient performance, Mr. Swan had not shown *Strickland* prejudice.

---

[6] *See United States v. Perrine*, 518 F.3d 1196, 1201 (10th Cir. 2008) (setting out deferential substantial basis standard for review of an issuing judge's probable cause determination).

[7] In *Leon*, 468 U.S. at 922-23, the Supreme Court recognized an exception to the suppression remedy if an officer acted with an objective good faith belief that a judge properly issued the warrant.

Mr. Swan argues that because there had been no illegal conduct observed when the first GPS device was attached to the Yukon, there was no probable cause for the second warrant that allowed a GPS device to be attached to the Suburban. This argument overlooks that the affidavit supporting the application for the second warrant stated that use of the first GPS device revealed activity consistent with drug trafficking. *See* ROA, Vol. 1 at 145. Mr. Swan fails to establish that reasonable jurists would debate whether appellate counsel was ineffective in failing to challenge the denial of the suppression motion on this basis. And he wholly fails to address the district court's alternative § 2255 conclusion regarding its ruling on the *Leon* good faith exception.

b. *Traffic stop*

Mr. Swan fares no better in arguing that appellate counsel was ineffective in failing to challenge the district court's denial of the suppression motion based on the legality of the traffic stop. In its order denying the suppression motion, the court determined that the initial stop was justified by both a suspected traffic violation confirmed by dashcam video of the stop (the Suburban's tinted rear window obscured the temporary registration permit) and reasonable suspicion that Mr. Swan possessed controlled substances. *See id.* at 161-65. The court therefore determined appellate counsel was not ineffective in failing to challenge the constitutionality of the stop.

In seeking a COA, Mr. Swan addresses only the traffic violation, arguing the stop was illegal because the officer who stopped him knew the vehicle was registered to him, so the inability to read the tag was an unlawful reason to stop him. Mr. Swan appears to be suggesting that the officer's inability to read the registration tag was not the true

motivation for the stop. But subjective motives do not bear on the "constitutional reasonableness" of a traffic stop. *Whren v. United States*, 517 U.S. 806, 813 (1996); *see United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). And, as the district court explained, because "the traffic stop was justified from its inception, any pretextual nature of the stop did not impact [Mr.] Swan's Fourth Amendment rights." ROA, Vol. 5 at 107. More importantly, Mr. Swan fails to challenge the alternative basis for the stop—reasonable suspicion he possessed illegal drugs. He therefore has not shown he is entitled to a COA to challenge appellate counsel's effectiveness concerning the traffic stop.

### 3. Counsel's Failure to Challenge the Sufficiency of the Evidence

In his § 2255 filings, Mr. Swan claimed that on direct appeal, appellate counsel should have challenged the sufficiency of the evidence. The district court denied relief on this claim because, when viewed in the light most favorable to the Government, the evidence was sufficient for the jury to find Mr. Swan guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Mr. Swan makes three arguments in his brief to this court.

First, he observes, correctly, that there was no fingerprint or DNA evidence.[8] "But *Jackson* does not require such evidence to sustain a criminal conviction." *Matthews v.*

---

[8] There was testimony that no tests for fingerprints or DNA were run on items found in the Suburban (cell phones, gun, ammunition, drug packaging, scales, lockbox),

*Workman*, 577 F.3d 1175, 1185 (10th Cir. 2009). "[T]he focus of a *Jackson* inquiry is not on what evidence is missing from the record, but whether the evidence in the record, viewed in the light most favorable to the prosecution, is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.*

Second, Mr. Swan asserts that he was not the person seen getting in and out of the Suburban in Aurora. This appears to concern the testimony of an officer who observed the driver of the Suburban exit the vehicle at the Aurora apartment complex and then get back in some ten minutes later. Because it was dark and the officer was about 20 feet away, he could not tell if the driver was Mr. Swan. *See* ROA, Vol. 3 at 380-83. Other evidence, however, showed that Mr. Swan was the sole occupant of the Suburban as it traveled south from Cheyenne to the Aurora apartment complex and back to Cheyenne, where police stopped it and arrested Mr. Swan. *See id.* at 394-97 (mobile surveillance officer testifying that about one hour before the Suburban arrived at the Aurora apartment complex, it drove up next to him on the highway traveling southbound and Mr. Swan was the only occupant); *id.* at 328-29 (testimony of officer who monitored GPS tracking that Mr. Swan's car went directly from Aurora apartment to Cheyenne with only a brief roadside stop); *id.* at 243 (Cheyenne police officer testifying that Mr. Swan was the driver and sole occupant of the Suburban when it was pulled over).

---

ROA, Vol. 3 at 267-68, 276-77, 280, 284-85, 353-54, 365, and that at the time of trial, a fingerprint analysis of the original packaging of the methamphetamine had not been finished, *id.* at 482.

Third, Mr. Swan argues there was no proof he used either of two cell phones seized from his car, so the jury should not have been allowed to see the cell phone messages. This argument lacks merit. The messages on one of the cell phones supported that the cell phone user was engaged in drug trafficking. *See id.* at 526-28. As already noted, sufficient evidence showed that throughout the trip from Cheyenne to Aurora and back again, Mr. Swan was the sole occupant of the Suburban, and that during the trip, a number of the messages at issue were sent or received. *See id.* at 339-40, 349-50. The phone was on the dashboard and plugged in. *See id.* at 248-49. A photo of Mr. Swan was on the phone, *see id.* at 423, 454, and the phone contained evidence of communications between the phone and a person Mr. Swan later telephoned while he was in custody, *see id.* at 334, 452. At trial, the court ruled that the Government established by a preponderance of the evidence that Mr. Swan had used the phone, so admission of the messages was proper. *See United States v. Brinson*, 772 F.3d 1314, 1320 (10th Cir. 2014) ("Proponents of the evidence need only show by a preponderance of the evidence that the opposing party had made the statement.").

In sum, because Mr. Swan's three arguments lack merit, reasonable jurists would not debate the district court's denial of Mr. Swan's claim that appellate counsel was ineffective in failing to challenge the sufficiency of the evidence.

### C. *Claims Raised for First Time in COA Application*

In his COA application, Mr. Swan raises three issues for the first time:

(1) The district court unreasonably denied his motion for a change of venue.

13

(2) The statutes of conviction, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A)(i), exceed Congress's power and violate the Tenth Amendment.

(3) The district court lacked subject matter jurisdiction and his appellate attorney was ineffective by not arguing lack of jurisdiction on appeal.

As to the first two issues, (1) Mr. Swan could have raised them on direct appeal, so they are subject to procedural default, which he makes no attempt to overcome, *see McGaughy*, 670 F.3d at 1159; (2) he did not raise them in his § 2255 filings and has not argued here for plain error review, *see Richison*, 634 F.3d at 1130-31; and (3) his arguments are insufficiently developed, *see Sawyers*, 962 F.3d at 1286. We therefore decline to consider those issues. He did not raise his jurisdiction argument in district court, either. To the extent we must address this issue, we reject it because the district court had jurisdiction under 18 U.S.C. § 3231: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

## III. CONCLUSION

We deny Mr. Swan's application for a COA and dismiss this matter.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

14